GLOVER, administrator, *v.* GREEN *et al.*

1. While the intentional alteration of a promissory note in a material part, if made by a person claiming a benefit under it, or by his agent with his consent, with the intent to defraud the maker, will

give the latter, at his option, the right to treat the note as void, in order to avail himself of this right he must elect to rescind the whole contract of which the note forms a part. He cannot enforce for his benefit a portion of that contract, and repudiate another portion of the same.

2. Even if a promissory note given for the purchase of land was afterwards fraudulently altered by the insertion therein of a promise to pay attorney's fees, and the maker would consequently have been entitled to rescind the contract of purchase, yet where interest upon the note, as originally executed, was past due and unpaid, and suit was therefore brought for the recovery of the land, the defendant could not, without paying anything, absolutely defeat the plaintiff's action on the ground that the note was void. In order to keep the land, the purchaser would be obliged to comply with the terms of his contract of purchase as expressed in the note, with the fraudulent alteration eliminated therefrom.

3. The verdict in this case was an absolute *non sequitur* from the pleadings and evidence, under any view of the law applicable; and a new trial must be granted.

April 15, 1895. Brought forward from the last term.

Equitable petition. Before Judge JENKINS. Jones superior court. April term, 1894.

R. V. HARDEMAN and HARDEMAN, DAVIS & TURNER, for plaintiff. WASHINGTON DESSAU, ROBERT L. BERNER and RICHARD JOHNSON, for defendants.

LUMPKIN, Justice.

In 1886, F. F. Green was indebted to N. S. Glover upon promissory notes given for borrowed money and secured by a mortgage upon a tract of land upon which Green and his wife resided. In November, 1888, Green having failed to pay any part of the principal or interest due on the notes, and being unable to do so, he and Glover had an accounting and settlement between themselves, by which it was ascertained and agreed that Green owed Glover something over $1,800; and in consideration of that sum, Green then sold outright to Glover the land covered by the mortgage, executed and delivered to him a warranty deed to the premises, and took up and canceled the notes and mortgage above mentioned. The price thus paid for the land was its

full value.  Immediately after this transaction, Green
proposed to buy the land for his wife at the same price,
and Glover sold it to her, taking her note, payable in
ten years but stipulating that interest at 8 per cent.
should be paid annually as rent, and at the same time
delivering to her a bond conditioned to make her titles
to the land upon her complying with her contract as
expressed in the note.  In this note was an interlinea-
tion of an agreement to pay ten per cent. attorney's fees
for collecting the same.

N. S. Glover died in 1889.  Mrs. Green made default
in paying the interest, and W. O. Glover, as administra-
tor of N. S. Glover, brought an action against her for
the recovery of the same, to which action Mrs. Green,
in addition to the general issue, pleaded *non est factum*,
and also that the note in question was given by her in
settlement of a debt due by her husband, and was there-
fore void.  There was no issue as to the fact that Mrs.
Green really signed the note, and the plea of *non est
factum* related entirely to the interlineation above men-
tioned, Mrs. Green claiming that the same was made
after the execution of the note, by N. S. Glover or his
agent, without her knowledge or consent.  After the
filing of these pleas, the case was continued; and subse-
quently Glover's administrator filed an equitable petition
against Green and his wife, praying for a recovery of
the land itself, or that it be sold and the proceeds ap-
plied to the debt due his intestate.  Mrs. Green then
changed front, and took the position that she had pur-
chased the land on her own account, and repudiated the
plea to the contrary filed in the former case.

These two cases were consolidated and tried together.
Without going further into detail, it would seem from
the record that at the trial Mrs. Green's contentions
were: first, that the note she had given for the purchase
of the land having been fraudulently altered, it was not

binding upon her, and therefore there could be no re-
covery in money by the plaintiff; and, second, that the
plaintiff could not recover the land itself, because the
note, the evidence of her indebtedness for its purchase,
having been rendered void, the plaintiff had no stand-
ing whatever in court.   In other words, that she could
keep the land without paying for it, simply because the
note given for its purchase had been fraudulently altered
by the deceased, N. S. Glover, or his agent.   The jury
returned the following verdict: "We, the jury, find for
the defendant upon the plea that the note was altered
with intent to defraud defendants.   We find further,
that defendant has never repudiated her contract for
purchase of said land on the ground that it was the
debt of her husband, but that it is her debt."   Upon
this verdict there was a decree for the defendant.

   Thus it has transpired that the deceased Glover has
been deprived of his land, and yet neither he nor his
administrator has ever received a single cent of the pur-
chase money.   Such a result is surely not legally possi-
ble in any fair view of the pleadings or the evidence;
and moreover, is utterly inconsistent with every idea of
justice.   The preponderance of the evidence would seem
to indicate that the alteration in the note was not fraud-
ulently made, but that the interlineation was inserted
before the execution of the note by Mrs. Green.   Ac-
cepting, nevertheless, as correct the finding of the jury on
this question, it by no means follows that, because of the
fraud, N. S. Glover's estate must lose both the money
and the land.   We think there can be no doubt that if
the note was altered by the deceased Glover or his agent,
with intent to defraud Mrs. Green, she would, under
section 2852 of the code, have the right to repudiate the
entire contract; but in order to do so, she would neces-
sarily have to surrender the land.   While, under the
facts, the administrator could not enforce payment of

the note, she could not refuse to pay and also keep the land. The fraudulent changing of the note would render the entire contract, of which it formed only a part, voidable at the option of Mrs. Green; but if she elected to rescind that contract, she would have to rescind the whole of it. She could not rescind it in part and enforce it in part. Even upon the assumption that the facts were as contended by Mrs. Green, the exact measure of her legal rights in the premises would be: either to give up the land and thus avoid liability on the note; or, if she desired to keep the land, comply with the terms of her note just as it stood before the fraudulent alteration in it was made. The propositions above announced are obvious without elaboration.

*Judgment reversed.*