## PROBASCO *v.* SHAW *et al.*

1. In an action upon an unconditional promissory note, evidence of a contemporaneous parol agreement that the note was not to be paid except upon the happening of a certain event is inadmissible, in the absence of evidence tending to show that the agreement was omitted from the note by accident, fraud, or mistake.

2. The evidence as to the loss of a certain written contract of guaranty

was sufficient to authorize the judge to admit secondary evidence of the contents of the writing.

3. There was sufficient evidence of notice to the plaintiff of failure of consideration of the notes at the time he became the holder thereof to authorize a charge upon that subject.

4. In order for the intentional alteration of a written contract in a material part to render the instrument void, under the Civil Code, § 4296, the alteration must have been made by a person claiming a benefit under it, or some one in collusion with him, with intent to defraud the other party. If a material alteration be made by a stranger, it will not vitiate the contract.

5. There was no such evidence of tender, or excuse for failure so to do, as to authorize the judge to charge the doctrine of the case of *Glover* v. *Green*, 96 *Ga.* 126 (22 S. E. 664). The correctness of the doctrine announced in that case is doubted.

DECEMBER 17, 1915.

Complaint. Before Judge Wright. Walker superior court. December 31, 1914.

H. S. Probasco, as the holder of two promissory notes, instituted an action thereon against the makers. One of the notes (omitting the names of the makers and of the witnesses as to their signatures) was as follows:

"$667.00                    Kensington, Ga., Jan. 12, 1907.

"September 1, 1909, for value received, we jointly and severally promise to pay to Duckworth Bros., of Martinsville, Ind., or order, the sum of six hundred and sixty-seven dollars at the Bank of LaFayette, Ga., with interest at eight per cent. per annum. Interest payable annually, with attorneys' fees, and without any relief whatever from valuation or appraisement laws."

On the back of this note was a credit of $56, bearing the date of the note. The other was in all respects the same, except the date of maturity, which was September 1, 1910. The defendants, among other things, admitted in their plea that they had executed three notes in favor of the payees, and set up (a) that if any of the notes sued on were those so executed by defendants, they had been materially altered and changed and therefore were void; (b) that the notes which they had executed had been given to cover payment of the purchase-price of a certain stallion purchased by them from the payees of the notes, and that the animal was not as represented to be by the sellers, was unsuited for the purpose for which he was purchased, and was worthless. The answer was subsequently amended by elaboration of both of these defenses. The case pro-

27

ceeded to a trial, and a verdict was directed for the plaintiff. The case was brought to the Supreme Court, and the judgment was reversed. *Shaw* v. *Probasco,* 139 *Ga.* 481 (77 S. E. 577). On a subsequent trial, after the close of the evidence offered by both sides, the case was submitted to a jury. A verdict was returned for the defendants. The plaintiff made a motion for new trial, which was overruled, and he excepted. Other facts sufficiently appear in the opinion.

*James P. Shattuck* and *W. M. Henry,* for plaintiff.

*H. P. Lumpkin* and *J. E. Rosser,* for defendants.

ATKINSON, J. 1. The judge permitted a witness to testify that the agent of the payees, who sold the horse and received the notes, stated to the purchasers that before he would collect the notes the horse would have to come up to the guaranty; that he did not intend to collect the notes until the horse had proved up to the guaranty. This evidence was admitted over the objection that the notes could not be contradicted by a contemporaneous parol agreement. It will be observed that each note contained an unconditional promise to pay money. The effect of the testimony would be to contradict the terms of the notes by engrafting into the contract conditions resting in parol, by which the purchasers might not be required to pay the money. There was no evidence that it was intended that such conditions were to be embodied in the notes and were omitted by fraud, accident, or mistake. Under these circumstances it was erroneous to admit the evidence over the objection. Civil Code, §§ 4268, 5752, 5788; *Bell* v. *Americus &c. R.,* 76 *Ga.* 754; *Lester* v. *Fowler,* 43 *Ga.* 190; *Dinkler* v. *Baer,* 92 *Ga.* 432 (17 S. E. 953); *Brannen* v. *Brannen,* 135 *Ga.* 590 (*b*), 591 (69 S. E. 1079).

2. The court allowed certain witnesses to give testimony as to the contents of a written contract of guaranty. The evidence was admitted over the objection that the writing was the highest evidence of the facts it was sought to prove, and that there was no evidence laying the foundation for admission of secondary evidence. Inquiry was duly made of the witnesses, and there was sufficient evidence to authorize the judge to find that the paper was lost. Under these circumstances there was no error in admitting the evidence.

3. The judge charged that if, before the plaintiff purchased the

notes, any one notified him that the horse was unsound and worthless; or that it was unfit for the purpose for which the defendants bought it, and that they were going to defend against the notes, but the plaintiff nevertheless bought the notes, then the defendants would have a right to set up the plea of worthlessness of the animal if they could sustain it by proof. Error was assigned upon this charge, on the ground that it was not authorized by the evidence and was confusing and misleading. R. B. Camp, a witness for the defendants, testified that after payment of the first note of the series he carried the paid note to Chattanooga, where he went to see Mr. Probasco about it, and "Mr. Probasco told me that he did not own them. I forbid them to trade on the notes, as there was forgery on the face of them. When the next note came due I went back to see Mr. Probasco, . . but Mr. Probasco told me he had advanced the money on them and would have to make some effort to collect them, and also that Duckworth Bros. were still bound to him for them." On cross-examination the witness testified: "I told Mr. Probasco that the horse was unsound." The plaintiff testified: "My name is H. S. Probasco. I live in Chattanooga, Tennessee; and I am the president of the American Trust & Banking Company. I own those notes, having bought them shortly after they were made, and before they became due. I see from the interrogatories that I bought them February 7, 1907, less than thirty days after they were given; and they are mine individually. I did not tell Mr. Camp that I had only advanced the money on them; I had already bought and paid for them. Mr. Camp made some complaint about the horse, and said that the notes would not be paid. This occurred on this visit of Mr. Camp's, and after the notes had been bought and one of them had been paid. I bought the notes from Douglas, supposing that they were all right." The notes were each indorsed in blank,—one of them being so indorsed by the American Trust & Banking Co. There was uncontradicted evidence that the notes were negotiated and indorsed by Douglas, the agent of the payees, who was duly authorized to do so, and who under proper authority had sold the horse as agent for the payees and received the notes for them. The plaintiff was presumed to be a bona fide holder of the notes without notice, and the plea of failure of consideration would not be available to the defendants without evidence to authorize a finding that the plaintiff took the notes with notice

of that defense. The plaintiff admitted in his testimony that "Mr. Camp made some complaint about the horse, and said that the notes would not be paid;" but testified that at the time this was done he was already the owner of the notes. If he had become the owner at the time Mr. Camp made this statement to him, of course the statement would not affect him as an innocent holder. But there was a conflict between his testimony and that of the witness Camp. They both referred to the same meeting, and Camp testified that at the time of the meeting referred Mr. Probasco told him that he did not own the notes. If this was the truth of the matter, and Mr. Probasco acquired the notes and Camp made complaint to him about the soundness of the horse and said that the notes would not be paid, it would be for the jury to say whether the plaintiff was affected with notice of the failure of consideration. Accordingly, the charge was authorized by the evidence, and was not confusing as alleged in the assignment of error.

4. The judge charged: "After the signing of the notes, if you should find that the plaintiff should take these notes, or any one else, fraudulently and with intent to defraud the makers of them, and alter them, and write in the words 'eight per cent.,' so as to make them draw eight per cent. interest either from date or maturity, and that was done fraudulently and with intent to defraud them, I charge you that would be such a material alteration of the notes as would authorize the defendants to vitiate the contract and set it aside at their will." One of the assignments of error upon this charge is, that it is not the law that if such alteration was made by "any one else," even fraudulently, it would vitiate the notes, but that result would flow from such alteration only when done by some one having an interest in the notes, or by his agent or another with his knowledge and consent. This criticism upon the charge is well taken. It is the result of the rulings announced in headnotes two to four, inclusive, in this case when it was here on the former occasion (*Shaw* v. *Probasco,* 139 *Ga.* 481, 77 S. E. 577), which applied Civil Code § 4296. An alteration by a stranger to the note would amount to spoliation of the paper, but would not destroy the rights of the persons legally interested in the paper. 2 Corpus Juris, 1231, § 101; *Shirley* v. *Swafford,* 119 *Ga.* 43 (45 S. E. 722); *Burch* v. *Pope,* 114 *Ga.* 334 (2), 335 (40 S. E. 227).

5. Error was assigned upon the following charge: "Look and see whether there was such an offer of rescission in this case; and if you find there is not, then I charge you the defendants could not defeat these notes for that reason, unless you should find further that the plaintiff, that is the party who took these notes, or some one else through some fault of their own, had put it beyond the power of the defendants in this case to so rescind, had made it impossible for them to offer to rescind or to restore back the property so obtained by them, and that they got no benefit or financial gain out of the property so obtained from the plaintiff; then in that event I charge you that they would not be required to rescind, but would be entitled to defeat the notes, provided there was a material fraudulent alteration in the notes." The criticisms upon this charge were: (a) "Because there was no evidence to authorize this charge as to any one in any way putting it beyond defendants' power to rescind, and as the undisputed evidence shows, as movant contends, that he took the notes without any notice of any reason for a rescission." (b) "Because the court in the charge excepted to uses the following language: 'or some one else through some fault of their own had put it beyond the power of the defendants in this case to rescind;' and the movant insists that this language was prejudicial to him, for the reason that if any person put it beyond the power of the defendants to rescind, it has the effect on movant who was an innocent purchaser, and holds him responsible for the acts of another person." (c) "Because the court uses the following language in said charge: 'unless you should find further that the plaintiff, that is the party who took these notes, or some one else. through some fault of their own, had put it beyond the power of the defendants in this case to so rescind;' which language was confusing and misleading to the jury, as it makes the movant to appear as the original taker and the holder of said notes when, as movant insists, he was the innocent purchaser of the same without notice." (d) "Movant further insists that said charge was erroneous and hurtful to movant, because there is no evidence going to show as when any offer to rescind was made; because the evidence further shows that the defendants paid one of the notes after it came due, and after it had been purchased by movant; and the evidence of the defendants shows that they sold the horse with full knowledge of the

alleged defects in the horse and the alleged change or alteration in the note, and received the proceeds of the sale and appropriated the same to their own use, this sale taking place after they had stood the horse for three years; and movant insists that the defendants ratified the contract made by them, and they can not ratify in part and repudiate in part." The judge was attempting to apply to the evidence the ruling announced in the case of *Glover* v. *Green,* 96 *Ga.* 126 (22 S. E. 664), to which reference was made in the 5th headnote of the decision of this case when it was before the Supreme Court on the former occasion, which was as follows: "While the intentional alteration of a promissory note in a material part, if made by a person claiming under it, or by his agent with his consent, with the intent to defraud the maker, will give the latter, at his option, the right to treat the note as void, in order to avail himself of this right he must elect to rescind the whole contract of which the note forms a part. He can not enforce for his benefit a portion of that contract, and repudiate another portion of the same." It appeared from the evidence that the horse was purchased from Duckworth Bros., of Evansville, Indiana, who were the payees in the notes, acting by their agent Douglas, who resided in the same place; also that the plaintiff, the transferee of the notes, resided at Chattanooga, Tennessee. While the plaintiff testified that he acquired the notes shortly after their execution, there was a conflict of evidence as to the time when he acquired them, and testimony upon the part of the defendants tended to show that they did not know into whose hands the notes had fallen until after their respective maturities. The defendants did not tender the horse. Camp, one of the witnesses, testified: "We tried to tender the horse back, but could not get them to answer our letters." There was also evidence to the effect that the horse was used by defendants, but that he was diseased, having shown himself to be diseased shortly after he was purchased, and was worth very little for the use for which he was intended. He finally went lame and blind. There was also evidence to the effect that the notes were altered, in respect to interest, by Douglas, the agent of the vendor, who had authority from his principal; but the evidence was conflicting as to whether this was done before or after the notes were signed. According to the decision of the case, if such an alteration was fraudulently

made after the note was executed, it would be void in the hands of the plaintiff, even though he was an innocent holder for value. If, in order to assert invalidity of the notes on account of such change, it was necessary for the defendants to make a tender of the horse, the evidence was insufficient to show tender or to excuse them from making tender. They always knew the address of the vendors, and could have made tender of the horse at any time to them. As the notes would be void in the hands of an innocent purchaser, such a tender would be effective as against any transferee thereof. The charge therefore was inapt in any event. It does not seem that the decision quoted from (*Glover* v. *Green,* supra) is a correct application of Civil Code § 4296, but there was no request to review or overrule it. Nor do the criticisms upon the charge invoke a ruling as to whether it was necessary for the defendants to rescind the contract and tender the horse in order to avail themselves of the defense based on a material alteration of the notes.

*Judgment reversed. All the Justices concur.*