## BARRINGER v. DINKLER HOTELS CO., Inc.

### No. 3279.

Circuit Court of Appeals, Fourth Circuit.
Aug. 1, 1932.

D. Gordon Baker, of Florence, S. C., for appellant.

F. L. Willcox, of Florence, S. C. (Willcox, Hardee & Wallace and A. L. Hardee, all of Florence, S. C., on the brief), for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

SOPER, Circuit Judge.

This action was brought by Dinkler Hotels Company, Inc., against W. R. Barringer on three promissory notes, aggregating $8,057.38, executed by him at Atlanta, Ga., on July 28, 1930, and payable with interest at 6 per cent. in that city to E. S. Richardson, as follows: One for $3,057.38, on January 15, 1931; one for $3,000, on February 15, 1931; and one for $2,000, on February 15, 1931. The notes were indorsed by the payee. Barringer, admitting that he had executed the notes, and that they had not been paid, defended on the ground that the notes had been materially altered after their execution by some person other than himself, and without his knowledge, authority, or consent. He alleged that the words "after maturity," contained in the printed forms upon which the notes were executed, had been stricken out with pen and ink, with the result that the notes appeared to bear interest from date, whereas they bore interest only after maturity as originally executed.

When the case came on for trial before a jury in the District Court, the holder offered the three notes in evidence and rested. Barringer then proved that he had given the notes in connection with the purchase and assignment of a lease on a hotel in Jacksonville, Fla., held by Richardson; and that not having sufficient cash to close the transaction, Richardson at his request had arranged with the Dinkler Hotels Company, Inc., to accept the notes and pay the face amount thereof to the owner of the hotel on account of the rental of $10,000 for the ensuing month of August; that the words "after maturity" were in the notes when executed, and had been erased without his knowledge or authority. Barringer offered also to show that he had been induced to make the purchase by certain false representations by Richardson as to the earnings of the hotel, but this testimony was rejected because it was not shown that the holder of the notes had any connection with these representations. On cross-examination of Barringer, it was brought out that a check for $8,057.38, dated August 1, 1930, had in fact been given by Dinkler Hotels Company, Inc., the present holder of the notes, to the owner of the hotel to apply upon the August rent.

Both parties moved for a directed verdict. It is the settled rule, when the parties in an action at law take this course, that " 'they thereby assume the facts to be undisputed and, in effect, submit to the trial judge the determination of the inferences proper to be drawn therefrom.' And upon review a finding of fact by the trial court under such circumstances must stand if the record discloses substantial evidence to support it." Williams v. Vreeland, 250 U. S. 295, 298, 39 S. Ct. 438, 439, 63 L. Ed. 989, 3 A. L. R. 1038. The District Judge directed a verdict in favor of the plaintiff for the amount of the notes with interest after maturity. It is obvious that he accepted the testimony of the maker as to the unauthorized alterations, for otherwise the verdict would have included interest from the date of execution. It has been suggested that the present holder would not have given a check on August 1, 1930, for the full amount of notes not payable until January and February of the following year, unless he was to receive interest for the use of the money in the interval; and that therefore it may fairly be inferred that the notes originally bore interest from date. The inference does not seem to follow as a matter of course since the evidence indicates that the notes passed through Richardson's hands before delivery to the present holder; but, in any event, it was not accepted by the District Judge for he limited the verdict to the amount of the notes according to their original tenor.

The exception taken by the plaintiff to the direction of the verdict by the District Judge raises the question under the Negotiable Instruments Law whether the holder of a note, proved to have been materially altered after execution without authority, may recover according to the original tenor of the instrument without showing that he had no share in the alteration. This question must be decided in accordance with the law of Georgia, for the notes were executed in Georgia and

made payable in that state. Scudder v. Union National Bank, 91 U. S. 406, 23 L. Ed. 245; In re Quality Shop (C. C. A.) 205 F. 266; Williamson Daily News v. Linograph Co. (C. C. A.) 47 F.(2d) 523. Georgia adopted the Uniform Negotiable Instruments Law with some variances in 1924. Georgia Code of 1926, §§ 4294 (1) to 4294 (195). With regard to the alteration of negotiable instruments, section 4294 (124) provides as follows: .

"*Alteration of instrument; effect of.*— Where a negotiable instrument is materially altered without the assent of all parties liable thereon, it is avoided, except as against a party who has himself made, authorized or assented to the alteration, and subsequent indorsers.

"But when an instrument has been materially altered and is in the hands of a holder in due course, not a party to the alteration, he may enforce payment thereof according to its original tenor." Acts Ga. 1924, pp. 126, 151.

■ Section 4294 (125) declares, amongst other things, that any alteration which changes the sum payable, either for principal or interest, is a material alteration. The appellee in this case, not disputing that the alteration was material, contends that the Dinkler Hotels Company, Inc., was a holder in due course, not a party to the alteration, and was therefore entitled to enforce the payment of the notes according to their original tenor, as the District Judge directed. The defect in this contention is that the evidence fails to show whether or not the hotels company was a party to the alteration, for it was incumbent upon it in this case to establish the fact that it had no part in the change, in order to entitle it to a directed verdict in its favor; and consequently even if it be conceded that it acquired the notes as a holder in due course, the judgment must be reversed and the case sent back to the District Court for a new trial.

It was the purpose of the Negotiable Instruments Law to codify the law merchant in regard to negotiable instruments with certain modifications, and it was expressly provided in section 4294 (195) that in any case not provided for in the act, the rules of the law merchant should govern, and that all laws and parts of laws inconsistent with the act were thereby repealed. See Acts of Georgia 1924, pp. 126, 165. Under the law merchant, a material alteration in commercial paper, without the consent of the party sought to be charged, extinguished his liability and there could be no recovery even by an innocent holder for value, unless the change was made without authority by a stranger having no legal interest in the instrument. To prevent and punish tampering with bills and notes, the law did not permit the holder to fall back upon the contract as it was originally executed. Clyde S. S. Co. v. Whaley (C. C. A.) 231 F. 76, L. R. A. 1916F, 289; Wood v. Steele, 6 Wall. 80, 18 L. Ed. 725; Schwartz v. Wilmer, 90 Md. 136, 44 A. 1059; Greenfield Savings Bank v. Stowell, 123 Mass. 196, 25 Am. Rep. 67; Central Nat. Bank v. Efird, 91 S. C. 135, 74 S. E. 136. So it appears that the first sentence of section 4294 (124), supra, was a codification of the earlier law. But the severity of the rule as affecting an innocent holder was modified by the second sentence to permit recovery upon a materially altered instrument, according to its original tenor by a holder in due course not a party to the alteration. The question at once arises when the issue is drawn, whether the burden is on the defendant, the maker of the note, to show that the plaintiff, the holder of the note, took part in the alteration, or upon the latter to show that he had no share in the unauthorized change. Reason and authority indicate that the burden of proof is on the holder to show his innocence when once the maker has proved the alteration. The maker has no control over the ownership or custody of the paper after it has been negotiated and has left his hands. He cannot prevent the alteration or ordinarily detect it until the instrument is presented for payment. The holder, it is true, may have no greater facilities in these respects before the instrument reaches him, but at least he knows full well whether or not he was a party to the alteration disclosed; and it is an easy matter for him, if he is innocent, to deny complicity in the change and thus bring himself within the exception contained in the second sentence of the section. Placing the burden upon him in such a contingency is in harmony with the general rule of statutory construction that a proviso or exception in a statute is to be strictly construed, and one who sets up an exception must establish it as being within the words as well as the reason thereof. Basham Co. v. Lucas (D. C.) 21 F.(2d) 550; Id. (C. C. A.) 30 F.(2d) 97; Spokane & I. E. R. Co. v. United States, 241 U. S. 344, 350, 36 S. Ct. 668, 60 L. Ed. 1037. And it has been quite generally held, both before and after the enactment of the Negotiable Instruments Law, that when the defense of alteration is set up and proved in a suit on a promissory note, the burden is then imposed

upon the holder seeking to recover to prove at least that he had no part in the change. Frazer's Adm'rs v. Frazer, 13 Bush (76 Ky.) 397; Darraugh v. Denny, 196 Ky. 614, 245 S. W. 152; Barnes v. Thomas (Iowa) 193 N. W. 409; Schram v. Johnson, 208 Iowa, 222, 225 N. W. 369; Milsaps v. Foster, 163 Tenn. 308, 43 S.W.(2d) 197; People's Bank & Trust Company v. Thibodaux, 172 La. 306, 134 So. 100.

The Negotiable Instruments Law was not enacted in Georgia until 1924, and no decision in that state interpreting section 4294 (124) has come to our attention. The cases of alteration have concerned notes executed before the enactment of the statute, and the courts have considered them in connection with an earlier statute codified as section 4296 of the Georgia Code of 1926, which relates generally to the alteration of written contracts. It provides in substance that if a material alteration of such a contract is made intentionally by a person claiming a benefit under it, with intent to defraud the other party, the alteration voids the whole contract; but if the alteration is unintentional, or by mistake, or immaterial, or without intent to defraud, or is made by a stranger, the contract will be enforced as originally executed. This statute has been applied to the alteration of a promissory note, and it has been held that if an alteration has been made by a person claiming a benefit under the note, with intent to defraud, it avoids the whole contract at the option of the maker, even though the note may have been transferred before maturity to one taking without notice. Shaw v. Probasco, 139 Ga. 481, 77 S. E. 577; Probasco v. Shaw, 144 Ga. 416, 87 S. E. 466. Moreover, it has also been held, in harmony with the decisions last cited from other states, that if the defense of alteration is set up in a suit on a promissory note, and the defendant shows that a material change had been made after execution, which is apparent on the face of the note, the burden of proof is then upon the holder of the note to establish the execution of the writing as sued on, or if he cannot do this, to enforce the contract as originally entered upon by showing that the alteration was made unintentionally, or by mistake, or without intent to defraud, or was made by a stranger to the transaction. Craig v. National City Bank, 26 Ga. App. 128, 105 S. E. 632; Aspinwall v. Holland, 39 Ga. App. 603, 147 S. E. 897. See, also, Gardner v. Fleetwood, 39 Ga. App. 51, 146 S. E. 127. It may be, as is suggested in a note by the editor of the Georgia Code, that section 4294 (124) modified the prior law as codified in section 4296 to the extent that the bona fide holder may now enforce the instrument according to its original tenor, even if the change has been made with intent to defraud by a party to the instrument; but there is no reason to suppose that the holder of a note, proved to have been altered, was relieved from the burden generally imposed to show that he was not a party to the alteration.

The judgment is reversed and the case remanded for new trial.

Reversed.