JANSEN *et al. v.* JANSEN *et al.*

No. 10173. FEBRUARY 16, 1935.

*A. W. White* and *W. R. Bentley,* for plaintiffs in error.
*William T. Thurman,* contra.

BECK, Presiding Justice. Joseph Jansen, W. R. Jansen, and others sued Earnest W. Jansen and Mrs. Bernice Jansen, alleging in their petition as follows: On December 13, 1931, Mrs. Emma Bertha Jansen, wife of one of the petitioners and mother of the remaining petitioners and of Earnest W. Jansen, died intestate, owning, among other property, two parcels of land in Fulton County, one known as 269 Ninth Street, and the other as 624 Rockmont Drive. Joseph Jansen was appointed administrator of her estate, and by proper order sold the said properties before the court-house door, and bought them in in his own name individually, at the same time agreeing with his children, although the deed recited an absolute conveyance, that he would hold the properties in trust for

the benefit of himself and the children to the extent that the children had become interested in them as heirs of their deceased mother. The children all gave receipts to Joseph Jansen as administrator, for amounts recited therein. None of the children received any consideration for these receipts; they gave the receipts in order that the estate might be cleared up, all of them understanding and agreeing that their father was holding the properties for their benefit. Later, on May 17, 1933, Joseph Jansen received from his children deeds conveying their respective interests in the two properties, giving no consideration therefor. On December 2, 1933, he, with the consent of all his children, conveyed the Rockmont Drive property to Earnest W. Jansen in consideration of sums advanced by the latter, for the purpose of meeting obligations on the Rockmont Drive property and also for small advances for other purposes, which conveyance was accepted by Earnest W. Jansen in full satisfaction of the indebtedness of the estate of his mother to him. As further consideration, Earnest W. Jansen agreed that his father, Joseph Jansen, and his brother and sister, Walter Jansen and Frederica Amelia Jansen, might make their home with him at the Rockmont Drive property as long as they desired to do so. Joseph Jansen, Walter Jansen, and Frederica Amelia Jansen did make their home there for a short time. Subsequently, upon the suggestion of Earnest W. Jansen, the Ninth Street property was conveyed to him by an absolute deed. This conveyance was made because Joseph Jansen was considering remarriage, and Earnest W. Jansen suggested that such remarriage might cast a cloud on the rights of the children. Earnest W. gave no legal or valuable consideration for the conveyance, although a consideration of $1000 was recited. He agreed with his father and brothers and sisters that he would hold the property in trust for them to the extent that they were interested in the property as heirs of their deceased mother, and that on request he would convey to them their respective interests in the property or would convey it to Joseph Jansen. On July 1, 1933, Earnest W. Jansen moved to the Ninth Street property, and refused to allow Joseph Jansen, Walter Jansen, and Frederica Amelia Jansen to live with him. They have requested Earnest W. Jansen to convey to them their respective interests in the Ninth Street property, but he has refused to do so, claiming that he owns the property absolutely and has conveyed the same to

320

his wife, Mrs. Bernice Jansen, who had notice of the rights and claims of defendants in error and who gave no valuable or legal consideration for the said property.

Earnest W. Jansen and Mrs. Bernice Jansen filed demurrers, ·general and special, in which they insisted that the petition showed that at the time of the agreement alleged in the petition the plaintiffs had no interest in the property, and that the agreement was without consideration; that Joseph Jansen can not recover in any case, as he seeks to recover for a violation of his own agreement and for a breach of trust by himself; and that the petition sets up an express trust, which is not shown to be in writing. The demurrers were overruled, and the defendants excepted.

■ We are of the opinion that the court properly overruled the general demurrer. It does not appear from the facts as alleged that the plaintiffs had no interest in the property, or that the agreement on which they partly rely was without consideration. Nor does it appear that the plaintiff, Joseph Jansen, seeks to recover for a violation of his own agreement and for a breach of trust by himself. If these things are true, they can be pleaded and sustained by evidence.

■ The main and controlling question in this case is, whether, under the facts alleged in the petition, the petitioners were seeking to recover on an express trust which is not shown to have been made in writing, or whether the trust which they contend was created by the deed to Earnest W. Jansen in connection with the representations and promises made by him was an implied trust. Trusts are of two kinds, viz., express trusts, and constructive or implied trusts. Code of 1910, § 3731. Trusts are implied: "(1) Whenever the legal title is in one person, but the beneficial interest, either from the payment of the purchase-money or other circumstances, is either wholly or partially in another. (2) Where, from any fraud, one person obtains the title to property which rightly belongs to another. (3) Where from the nature of the transaction it is manifest that it was the intention of the parties that the person taking the legal title shall have no beneficial interest." § 3739. It is the contention of the defendants in error that the allegations of the petition make out a constructive trust on the Ninth Street property referred to in the petition. We think the decisions of our court settle the proposition that where a conveyance absolute in form is

made to one person, but where the circumstances show that the real intention of the parties was not to make an absolute conveyance but a conveyance with restrictions or reservations, where it is alleged and appears that there was fraud on the part of the grantee to induce the execution of the deed, a court of equity will set up an implied trust in the property, by construing the conveyance so as to do full justice to the parties as their interests may appear. In such cases the courts have held that to allow an oral agreement to be set up which restricts the original instrument does not contravene the statute of frauds, since the jurisdiction of the court is predicated upon the fraud of the grantee; and the parol-evidence rule does not exclude oral testimony which tends to establish the fraud and show the real intention of the parties. In *Jenkins* v. *Lane,* 154 *Ga.* 454, 475 (115 S. E. 126), it was said: "In all cases where a trust is sought to be implied, the court may hear parol evidence of the nature of the transaction, or the circumstances, or conduct of the parties, either to imply or rebut a trust. (*a*) While an express trust must be created by writing, and can not be proved by parol, implied trusts may be established by parol evidence, although the effect of such evidence is to alter or vary a written instrument, and although the defendant sets up and insists upon the statute of frauds. (*b*) The principle in Code § 3258, that 'a deed or bill of sale, absolute on its face, and accompanied by possession of the property, shall not be proved (at the instance of the parties) by parol to be a mortgage only, unless fraud in its procurement is the issue to be tried,' is not applicable to a case seeking to set up an implied trust. (*c*) Promises which are made deceitfully for the purpose of accomplishing fraudulent designs, whatever may be their terms, do not, unless reduced to writing, raise express trusts; but the law, acting upon them according to their nature, makes them a basis upon which to build up in favor of the defrauded party an implied trust. . . A trust is implied where, from any fraud, one person obtains title to property which rightfully belongs to another. An implied trust arises wherever a person acquires the legal title to land or other property by means of an intentionally false and fraudulent verbal promise to hold the same for a certain specified purpose; and after having thus fraudulently obtained title, he retains, uses, and claims the property absolutely as his own, so that the whole transaction by means of which the ownership is ob-

322

tained is in fact a scheme of actual deceit." The court further said: "This brings us to consider the vital and important question involved in this litigation; and that is, whether an implied trust can be set up by parol evidence in behalf of the grantor when he conveys property by warranty deeds purporting to be absolute conveyances, when possession is delivered to the grantee. . . Such a trust occurs when a person acquires the legal title to land by means of an intentionally false and fraudulent verbal promise to hold the same for a certain specified purpose,—as, for example, a promise to convey the land to a designated individual, or to reconvey it to the grantor. . . Equity regards such a person as holding the property charged with a constructive trust, and will compel him to fulfill the trust by conveying according to his engagement." See also *Summerour* v. *Summerour,* 148 *Ga.* 499 (97 S. E. 71). In *Brown* v. *Doane,* 86 *Ga.* 32 (12 S. E. 179, 11 L. R. A. 381), this court held: "If by a false and fraudulent oral promise which he intends at the time of making it afterwards to violate, the vendee of two contiguous parcels of land which he has contracted for by separate and distinct contracts, induces the vendor to convey to him both parcels by one and the same absolute unconditional deed, he paying for one parcel, but not for the other, equity by reason of his fraud will fasten upon him a constructive trust in behalf of the vendor as to the parcel not paid for, although the two parcels are not described in the deed as several tracts but both together are treated as one tract." In the opinion Chief Justice Bleckley said: "There is no law which requires a fraudulent undertaking to be manifested by writing. Those who use promises, which they make deceitfully, for the purpose of accomplishing fraudulent designs, are generally careful not to furnish written evidence of their turpitude. Such promises, whatever may be their terms, do not, unless reduced to writing, raise express trusts; but the law, acting upon them according to their nature, makes them a basis upon which to build up in favor of the defrauded party an implied or constructive trust." See also *Cameron* v. *Ward,* 8 *Ga.* 245. In *Jones* v. *McElroy,* 134 *Ga.* 857 (68 S. E. 729, 137 Am. St. R. 276), it was said: "Where land is jointly owned by two persons, and one obtains a deed from the other of his interest by means of an intentionally false and fraudulent promise to sell the land at its true value and pay off an incumbrance and account for the balance, or, failing to find

323

·a purchaser, he will procure a new loan to discharge the present incumbrance, and, having thus obtained the title, he retains, uses, and claims the property as absolutely his own, the whole transaction by which ownership is obtained is such a fraud as will entitle the grantor to have the deed canceled." In the opinion the court said: "This relief may be granted either by declaring the holder of the legal title a trustee ex maleficio (*Brown* v. *Doane,* 86 *Ga.* 32) or by a cancellation of the deed fraudulently procured. The plaintiff's relief is not based on a mere breach of an oral promise, but upon the fraud of the grantee in procuring an absolute deed to be made to himself upon his fraudulent representation and promise that he would use the title for the grantor's benefit." Numerous other cases might be cited, in which the existence of fraud on the part of the grantee in a deed like that in question here may be shown by parol evidence, and where shown, the existence of fraud in connection with the execution of the deed authorizes the court to hold it an implied trust. Applying those principles to that which we have stated to be the controlling issue in this case, the court did not err in upholding the contention of the plaintiffs as to a constructive or implied trust. So holding, there was no error in the judgment to which the plaintiffs in error take exception. The petition set out fully and completely a cause of action; and it is unnecessary to pass upon the numerous special demurrers, as the petition was not faulty in the parts attacked by special demurrers, in view of what we have held. In the petition all the information was given to which the defendants were entitled.

*Judgment affirmed. All the Justices concur.*