**In the Matter of Dwight C. McDOWELL, Debtor.**

**J. Coleman Tidwell, Trustee, Plaintiff,**

**v.**

**Charles Robert Hendricks, Defendant.**

**Bankruptcy No. 98–54657 RFH.**
**Adversary No. 99–5113.**

United States Bankruptcy Court,
M.D. Georgia,
Macon Division.

Feb. 8, 2001.

Ed S. Sell, III and Neil A. Halvorson, Macon, GA, for Plaintiff.

Charles R. Hendricks, Santa Clarita, CA, Marilyn G. McDowell, Savannah, GA, for Defendant.

### MEMORANDUM OPINION

ROBERT F. HERSHNER, Jr., Chief Judge.

J. Coleman Tidwell, Trustee, Plaintiff, filed a complaint on September 10, 1999. Charles Robert Hendricks, Defendant,

filed a response on October 12, 1999. A trial was held on August 8, 2000. The Court, having considered the evidence presented and the arguments of counsel, now publishes this memorandum opinion.

### FINDINGS OF FACT

Defendant is married to Marilyn McDowell. Defendant and Marilyn McDowell are attorneys.[1] Dwight C. McDowell, Debtor, is the father of Marilyn McDowell. Debtor is Defendant's father-in-law.

Debtor and Carolyn McDowell were divorced in Colorado. Debtor was ordered to pay $310,000 to Carolyn McDowell as a property settlement. Debtor satisfied part of the obligation.

Marilyn McDowell was involved in the Colorado divorce proceedings. Debtor and Marilyn McDowell were to be held in contempt of court unless Debtor satisfied by September 14, 1998, the remainder of the obligation to Carolyn McDowell.

Debtor owned an interest in the Regency Apartments. Debtor planned to sell his interest to satisfy the remainder of his obligation to Carolyn McDowell. The sale was to close in two parts. Debtor opened an interest-bearing checking account at First Liberty Bank. The sole purpose of using the account was to satisfy Debtor's obligation to Carolyn McDowell. Debtor deposited the proceeds from the first closing into the account at First Liberty Bank. Debtor's initial deposit was in the amount of $140,000.

Debtor did not believe that the second closing on the Regency Apartments would occur in time for him to satisfy the remainder of his obligation prior to the contempt deadline. Debtor, around August 27, 1998, requested a loan from Defendant. The sole purpose of the loan was to enable Debtor to satisfy the remainder of his obligation to Carolyn McDowell and, thus,

avoid the pending contempt action. Defendant agreed to loan $80,000 to Debtor in order to protect Defendant's wife, Marilyn McDowell, from the contempt action.

Debtor signed a promissory note dated August 31, 1998. The promissory note was prepared by Defendant. The promissory note provided that Debtor was to repay Defendant's loan of $80,000 plus ten percent interest in five years. There were no other written documents memorializing the loan.

Defendant issued a check dated August 31, 1998, for $80,000 payable to Debtor. Debtor deposited the check into his account at First Liberty Bank. Debtor testified that he understood that he could not use Defendant's loan for any purpose other than to satisfy his obligation to Carolyn McDowell.

The second closing on the Regency Apartments occurred sooner than Debtor had anticipated. Debtor deposited the proceeds from the second closing into his account at First Liberty Bank. Debtor drew a check on his account for $235,000 on or around September 14, 1998.[2] Debtor used the funds to purchase a cashier's check for $235,000 to satisfy the remainder of his obligation to Carolyn McDowell.

Debtor repaid Defendant's loan by issuing a check dated September 18, 1998, in the amount of $80,000.[3] The check was drawn on Debtor's account at First Liberty Bank. Between the initial deposit by Debtor and his $80,000 repayment to Defendant, Debtor's balance in the First Liberty Bank account was never less than $80,000.

Debtor closed his account at First Liberty Bank and deposited the remaining $28,000 into an account he maintained at another bank.

---

**1.** Defendant is licensed to practice law in California. Marilyn McDowell is licensed to practice law in California, Colorado, and Georgia.

**2.** *See* Plaintiff's Exhibit 5.

**3.** *See* Plaintiff's Exhibit 6.

Debtor filed a petition under Chapter 7 of the Bankruptcy Code on October 26, 1998.

### CONCLUSIONS OF LAW

Plaintiff seeks to avoid, as a preferential transfer,[4] Debtor's payment of $80,000 to Defendant. Plaintiff and Defendant stipulated that the only issue for trial was whether the payment was a "transfer of an interest of the debtor in property." Defendant, in defense of Plaintiff's complaint, contends that his loan to Debtor was "earmarked." Defendant also contends that the $80,000 was held by Debtor in an implied trust. Simply stated, Defendant contends that Debtor had no interest in the $80,000.

■ Plaintiff must prove that the payment at issue was a transfer of an interest of the Debtor in property. Plaintiff has the burden of proving that the $80,000 loan by Defendant to Debtor was not earmarked. *Cielinski v. Douglas Leonhardt & Assoc., Inc. (In re B & B Automatic Fire Protection, Inc.)*, Ch. 7 Case No. 94–40224, Adv. No. 96–4004, p. 11 (Bankr. M.D. Ga. June 13, 1997) (Laney, J.); *see also Kaler v. Community First National Bank (In re Heitkamp)*, 137 F.3d 1087, 1089 (8th Cir.1998).

Defendant relies, in part, on the following statement in *Collier on Bankruptcy:*

> When a third person makes a loan to a debtor specifically to enable that debtor to satisfy the claim of a designated creditor, the proceeds never become part of the debtor's assets, and therefore no preference is created. The rule is the same regardless of whether the proceeds of the loan are transferred directly by the lender to the creditor or are paid to the debtor with the understanding that they will be paid to the creditor in satisfaction of his claim, so long as the proceeds are clearly "earmarked."

5 *Collier on Bankruptcy* ¶ 547.03[2], 547–23 (15th ed. rev.2000).

In *Tolz v. Barnett Bank of South Florida, N.A. (In re Safe–T–Brake of South Florida, Inc.)*,[5] the Bankruptcy Court for the Southern District of Florida stated:

> Under the earmarking doctrine, a transfer cannot be avoided where a third party makes a transfer of its property directly to one or more of the debtor's creditors or transfers property to the debtor with the clear agreement that the property transferred is to be used by the debtor to pay one or more of its creditors, and the property is in fact so used. The transaction must be structured in such a way that the debtor never acquires an interest in the property to be transferred to the debtor's creditors.
>
> . . . .
>
> Application of the earmarking doctrine is inherently fact based. The court must determine the precise agreement between the debtor and the transferor of property in order to determine wheth-

---

**4.** 11 U.S.C.A. § 547(b) (West 1993). This section provides as follows:

§ 547. Preferences

. . . .

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C.A. § 547(b) (West 1993).

**5.** 162 B.R. 359 (Bankr.S.D.Fla.1993).

er the debtor ever acquired an interest in the property that was transferred....

. . . .

By the same token, modern caselaw has come to recognize that the earmarking doctrine may apply both in those situations where the lender of new funds pays the prior creditor directly or where the funds are entrusted to the debtor with the understanding that the debtor is to use the money only to pay the debtor's obligation to a specific creditor designated by the source of the funds. *In re Bohlen*, 859 F.2d at 565. In the latter situation, the debtor effectively holds the money "in trust" for the benefit of the designated creditor and thus the debtor has no dispositive "control" over the funds. Under this analysis, the new money, although in possession of the debtor, never becomes property of the debtor because the debtor has no control over how the funds are ultimately distributed, and thus no voidable preference results. *Id.*

162 B.R. at 363–64.

In *Kaler v. Community First National Bank (In re Heitkamp),*[6] the Eighth Circuit Court of Appeals stated:

According to the earmarking doctrine, there is no avoidable transfer of the debtor's property interest when a new lender and a debtor agree to use loaned funds to pay a specified antecedent debt, the agreement's terms are actually performed, and the transaction viewed as a whole does not diminish the debtor's estate. *See McCuskey v. National Bank of Waterloo (In re Bohlen Enters., Ltd.),* 859 F.2d 561, 566 (8th Cir.1988). No avoidable transfer is made because the loaned funds never become part of the debtor's property. *See id.* Instead, a new creditor merely steps into the shoes of an old creditor. *See Buckley v. Jeld–Wen, Inc. (In re Interior Wood Prods. Co.),* 986 F.2d 228, 231 (8th Cir. 1993). Application of the earmarking

doctrine is not limited to situations in which the new creditor is secondarily liable for the earlier debt, but extends to situations where "any third party ... pays down a debt of the debtor ... because [the] payments ... would have no effect on the estate of the debtor." *Stover v. Fulkerson (In re Bruening),* 113 F.3d 838, 841 (8th Cir.1997); *see Hansen v. MacDonald Meat Co. (In re Kemp Pac. Fisheries, Inc.),* 16 F.3d 313, 316 n. 2 (9th Cir.1994) (per curiam) (earmarking doctrine not limited to protection of guarantors); *Steinberg v. NCNB Nat'l Bank of N.C. (In re Grabill Corp.),* 135 B.R. 101, 109 (Bkrtcy.N.D.Ill.1991) (same); *Tolz v. Barnett Bank of S. Fla., N.A. (In re Safe–T–Brake of S. Fla., Inc.),* 162 B.R. 359, 364 (Bkrtcy.S.D.Fla. 1993) ("[c]aselaw has extended the earmarking doctrine beyond the guarantor scenario"). "[R]egardless of the lender's prior relationship with the debtor, or lack thereof, replacing one creditor with another of equal priority does not diminish the estate and thus no voidable [transfer] results." *In re Safe–T–Brake,* 162 B.R. at 364 (citing *In re Bohlen,* 859 F.2d at 565–66).

137 F.3d at 1088–89.

■ "If all that occurs in a 'transfer' is the *substitution of one creditor for another,* no preference is created because the debtor has not transferred property of his estate; he still owes the same sum to a creditor, only the identity of the creditor has changed. This type of transaction is referred to as 'earmarking,' ..." *Coral Petroleum, Inc. v. Banque Paribas–London,* 797 F.2d 1351, 1356 (5th Cir.1986). (Emphasis added).

■ Three requirements must be met for application of the earmarking doctrine: "(1) the existence of an agreement between the new lender and the debtor that the new funds will be used to pay a specified antecedent debt, (2) performance of that agreement according to its terms, and

6. 137 F.3d 1087 (8th Cir.1998).

(3) the transaction viewed as a whole (including the transfer in of the new funds and the transfer out to the old creditor) does not result in any diminution of the estate." *McCuskey v. National Bank of Waterloo (In re Bohlen Enterprises, Ltd.),* 859 F.2d 561, 566 (8th Cir.1988).

In *In re B & B Automatic Fire Protection, Inc.,* Judge Laney stated, in part, as follows:

"The earmarking doctrine is entirely a court-made interpretation of the statutory requirement that a voidable preference must involve a 'transfer of an interest of the debtor in property.'" *McCuskey v. National Bank of Waterloo (In re Bohlen Enterprises, Ltd.),* 859 F.2d 561, 565 (8th Cir.1988). Generally, for § 547 purposes, property is property of the debtor when the transfer of such property would "deprive the bankruptcy estate of something which could otherwise be used to satisfy the claims of creditors." *Danning v. Bozek (In re Bullion Reserve of North America),* 836 F.2d 1214, 1217 (9th Cir.1988). The earmarking doctrine, however, operates as an exception to this general rule. "This exception ... is justified by the fact that in such a case the funds neither are controlled by, nor belong to, the debtor. The money never becomes part of the debtor's assets; rather, the transaction merely substitutes one creditor for another without diminishing the value of the bankruptcy estate." *In re Kemp Pacific Fisheries, Inc.,* 16 F.3d at 316.

pp. 10–11.

■ Turning to the case at bar, Defendant loaned Debtor $80,000 so that Debtor could satisfy the remainder of his obligation to a specific creditor, namely, Carolyn McDowell. Debtor deposited Defendant's check into a bank account that Debtor had established to satisfy this obligation. Debtor understood that Defendant's loan was only to be used to satisfy this obligation. Debtor satisfied his obligation to Carolyn McDowell. Debtor, several days later, repaid Defendant's loan. The payments to Carolyn McDowell and to Defendant were both made within ninety days of Debtor's bankruptcy filing. Thus, both payments were within the preference period.

In order for the earmarking doctrine to apply, there must be no diminution in the bankruptcy estate. When Debtor repaid the $80,000 to Defendant, it was simply repayment of a loan. The earmarking doctrine applies when one creditor is substituted for another. When Debtor repaid the $80,000 to Defendant, no other creditor was substituted in Defendant's place. The obligation was paid in full and resulted in a diminution of Debtor's bankruptcy estate. The Court is not persuaded that the earmarking doctrine applies.

■ Defendant also contends that the funds he loaned Debtor were held in an implied trust. "An implied trust is either a resulting trust or a constructive trust." O.C.G.A. § 53–12–90 (1997).

"[S]ometimes it is exceedingly difficult to differentiate between [a resulting trust and a constructive trust]; but ordinarily distinctions are unnecessary since both are implied trusts and are governed by the same rules." *Hancock v. Hancock,* 205 Ga. 684, 54 S.E.2d 385, 389 (1949).

■ Implied trusts include circumstances where the parties intended that the person holding legal title to the property would have no beneficial interests in the property. *See* O.C.G.A. §§ 53–12–91, –93 (1997).

Defendant relies on *Salzburger Bank v. Standard Oil Co.*[7] where the Georgia Supreme Court stated: "One who receives money to be paid to another, or to be applied to a particular purpose, to which he does not apply it, is a trustee, and may be sued either at law for money had and

7. 173 Ga. 722, 161 S.E. 584 (1931).

received or in equity as a trustee for a breach of trust." 161 S.E. at 586.

Defendant also relies on *Federal Employees Credit Union v. Capital Automobile Co.*[8] In that case, a credit union agreed to make a loan to enable Pierce to purchase a car. The loan was to be secured by a lien on the car. The credit union issued a check jointly payable to Pierce and the car dealer. Pierce did not purchase the car. Pierce and the car dealer endorsed the credit union's check. The car dealer deposited the check. The car dealer then gave Pierce the proceeds of the check. The credit union filed a complaint to recover the funds from the car dealer.

The Georgia Court of Appeals ruled in favor of the credit union and stated as follows:

> When the special purpose for which defendant held plaintiff's funds failed, it became defendant's duty to return same to plaintiff. Broome v. Cavanaugh, 102 Ga.App. 563(1), 116 S.E.2d 881; Whitaker v. Creedon, 97 Ga.App. 320 (1, a), 103 S.E.2d 175; Holtsinger v. Beverly, 53 Ga.App. 614, 186 S.E. 776; Chatham Motor Co. v. De Sosa, 48 Ga.App. 257, 172 S.E. 604. That [the car dealer] no longer has the money because it gave or returned same to someone else (Pierce) is no defense, nothing else appearing. "[T]he law is settled that an action lies in all cases where one has received money which another, ex aequo et bono [*in justice and fairness*], is entitled to recover and which the recipient is not entitled in good conscience to retain." Bill Heard Chevrolet Company, Inc. v. Atlantic Discount Company, Inc., 120 Ga.App. 388, 170 S.E.2d 740.

183 S.E.2d at 40–41 (emphasis added).

In *Flatau v. Gooch (In re Rice)*,[9] this Court stated:

"Because the debtor does not own an equitable interest in property he holds in trust for another, that interest is not 'property of the estate.' Nor is such an equitable interest 'property of the debtor' for purposes of § 547(b). As the parties agree, then, the issue in this case is whether the money [that Debtor] transferred from [his personal checking] account to [Defendants] was property that [Debtor] had held in trust for [Defendants]." *Begier v. Internal Revenue Service*, 496 U.S. 53, 110 S.Ct. 2258, 2263, 110 L.Ed.2d 46 (1990).

"While the Bankruptcy Code allows property held in trust by a debtor not to be considered property of that debtor, the beneficiary of the trust is entitled to these trust assets only if the trust assets are traceable." *Bethlehem Steel Corp. v. Tidwell*, 66 B.R. at 941.

"To establish a trust relationship that excludes property from the bankruptcy estate, a claimant must: (1) prove the existence of the trust; and (2) trace the identity of his property. *Schuyler v. Littlefield*, 232 U.S. 707, 34 S.Ct. 466, 58 L.Ed. 806 (1914); 4A *Collier on Bankruptcy*, ¶ 7025[1] (14th Ed. J. Moore 1975)." *Rosenberg v. Collins*, 624 F.2d 659, 663 (5th Cir.1980).

The Court looks to the state law of Georgia to determine the existence of a constructive trust. *See T & B Scottdale Contractors, Inc. v. United States*, 866 F.2d 1372, 1376 (11th Cir.), *cert. denied*, 493 U.S. 846, 110 S.Ct. 139, 107 L.Ed.2d 98 (1989); *Old Republic National Title Insurance Co. v. Tyler (In re Dameron)*, 155 F.3d 718, 722 (4th Cir.1998); *Bethlehem Steel v. Tidwell*, 66 B.R. at 935.

The Court, however, looks to federal law to determine whether the funds at issue can be traced to the constructive trust. *See In re Dameron*, 155 F.3d at 723; *Connecticut General Life Insur-*

---

8. 124 Ga.App. 144, 183 S.E.2d 39 (1971).

9. Ch. 7 Case No. 95–30420, Adv. No. 97–3016, pp. 18–20 (Bankr.M.D.Ga. July 23, 1999).

*ance Co. v. Universal Insurance Co.,* 838 F.2d 612, 618–19 (1st Cir.1988).

■ The fact that Debtor deposited Defendant's loan into a checking account that contained other funds does not destroy the characterization of the loan as trust funds. *Bethlehem Steel Corp. v. Tidwell,* 66 B.R. 932, 941–42 (M.D.Ga.1986).

Plaintiff contends that under the parol evidence rule, a trust cannot be impressed on funds where the only written document unequivocally establishes a debtor-creditor relationship. *Plaintiff's letter brief,* p. 2 (filed Aug. 25, 2000). The written document in the case at bar is the promissory note prepared by Defendant and signed by Debtor. Plaintiff relies upon *Probasco v. Shaw,* 144 Ga. 416, 87 S.E. 466 (1915), in which the Georgia Supreme Court stated, "The effect of the testimony would be to *contradict* the terms of the [promissory] note by ingrafting into the contract conditions resting in parol, by which the purchasers might not be required to pay the money." 87 S.E. at 466 (emphasis added).

In *Jansen v. Jansen,*[10] the Georgia Supreme Court stated that "implied trusts may be established by parol evidence, although the effect of such evidence is to alter or vary a written instrument...." 178 S.E. at 656 (quoting *Jenkins v. Lane,* 154 Ga. 454, 475, 115 S.E. 126 (1922)). *See also Flatau v. Atef (In re Gaites),* 466 F.Supp. 248, 256 (M.D.Ga.1979).

The Georgia Code provides:

**53–12–94. Parol evidence and implied trusts.**

In all cases in which a trust is sought to be implied, the court may hear parol evidence of the nature of the transaction, the circumstances, and the conduct of the parties, either to imply or rebut the trust.

O.C.G.A. § 53–12–94 (1997).

■ The Court is persuaded that it may hear parol evidence to determine the true nature of the transaction between Debtor and Defendant.

The Court is persuaded that Debtor held the $80,000 in an implied trust. Defendant loaned the funds to Debtor "to be applied to a particular purpose," namely, to pay a specific creditor, Carolyn McDowell. Debtor deposited the funds into a checking account, the sole purpose of which was to satisfy his obligation to Carolyn McDowell. Debtor understood that he could not use Defendant's loan for any purpose other than to satisfy this obligation. Debtor's account balance in the First Liberty Bank account always exceeded $80,000 before he repaid Defendant. The Court is persuaded that the $80,000 repayment was not a "transfer of an interest of the debtor in property" as that phrase is used in section 547(b).

The $80,000 loan by Defendant to Debtor was to be applied to a particular purpose. Justice and fairness guide the Court in reaching this conclusion.

An order in accordance with this memorandum opinion will be entered this date.

---

**10.** 180 Ga. 318, 178 S.E. 654 (1935).