30976. COMMERCIAL AUTO LOAN CORP. *v.* BAKER.

Decided March 7, 1946.

*Ezra E. Phillips,* for plaintiff in error.
*Burress & Dillard,* contra.

MACINTYRE, J. The plaintiff in this action (defendant in error), Baker, contends: that the note and conditional bill of sale to secure a debt never had any inception, for the simple reason that it shows that, because of the non-performance of the condition precedent, there is no contract in existence, and that therefore there is nothing to which to apply the excluding-evidence rule; that he signed some printed forms leaving blanks therein to be filled in; that the defendant (plaintiff in error), Commercial Auto Loan Corporation, hereinafter called the "Loan Company," filled in these blanks contrary to Baker's instructions; and that the issue here was raised by one of the original parties, and the rule as to third persons who are bona fide purchasers for value is not applicable. The Loan Company contends: that all of the blanks in the forms in question were filled in by them before Baker signed and delivered them to the Company; and that it (the Loan Company) was a bona fide purchaser for value from P. & G. Sales & Service, hereinafter called the "Sales Company." Baker further contends: that the blanks should have been filled in so as to have made the Loan Company the payee in the note and the vendee in the conditional bill of sale; that the blanks were filled in by the plaintiff in error, the Loan Company, with the third party, the Sales Company, so as to make it appear that the Loan Company was a bona fide purchaser, when in fact it was not; that, in view of the fact that the plaintiff's business was hauling produce from various States, which oftentimes necessitated his being out of Atlanta when the installments became due, a provision was to be inserted in the contract whereby he was to have 30 to 60 days to make the payments before the same became due when it was thus necessary to be away from Atlanta.

Apparent authority is *power* which results from acts that *appear to third persons* to be authorized by the principal. Restatement of the Law of Agency, 440, § 194 (a). The jury were authorized to find under the evidence that there was no third party involved in the instant case, as the whole controversy was between the original parties to the transaction. Restatement of the Law of Agency, 332, § 125; 126, § 51.

The fact that an agent is intrusted with an instrument and is authorized to do something with reference to the instrument does not give him power to deal with the instrument in an unauthorized

way. Restatement of the Law of Agency, 421, § 177; see especially p. 400, § 164, and p. 418, § 175. In 41 C. J. 420, § 276, it is said: "When a mortgage is duly and properly executed, but contains blank spaces for the name of the mortgagee, the description of the property to be covered, or the amount and conditions of the debt to be secured, and the blanks are afterward filled up in accordance with the directions of the mortgagor and with his consent, it is a valid mortgage and binding upon him, at least in equity; but it is otherwise if the blanks are filled up without his authority or consent, or contrary to his direction. So if a mortgage left blank as to the mortgagee's name is filled up in accordance with the mortgagor's instructions and comes into the hands of an innocent and bona fide holder for value, it will be a valid security, without reference to whether such instructions were oral or in writing, or whether the name was inserted before or after delivery, or in the presence or absence of the mortgagor. But if the instrument is filled up contrary to the directions of the mortgagor, and to his injury, with knowledge on the part of the person who takes and holds under it, it is null and void as to him. An agent may have implied authority to fill in the name of the mortgagee." We think that this same rule, which is applicable to a mortgage, would be applicable to a conditional bill of sale in this State. In State v. Matthews, 44 Kan. 596, 604 (25 Pac. 36, 10 L. R. A. 308), it is said: "We believe, however, that all the courts hold that if the instrument is filled up contrary to the directions of the maker and to his injury, and with full knowledge on the part of the party who takes and holds under it, the instrument will be held to be absolutely null and void as to him. . . On the other hand, however, it is generally held that if the instrument is filled up in accordance with the instructions, written or oral, of the maker, in his presence or absence, before or after its delivery, and under it the property at that time or afterward comes into the hands of some innocent and *bona fide* holder for value, the instrument will be held to be valid." We think that the first rule announced in State v. Matthews, supra, is applicable here, under the evidence of Baker, the defendant in error. He testified in part: that he purchased a *truck and trailer,* hereinafter referred to as the "truck," from the Sales Company; that the sale was for cash in the amount of $2250; that he had another

automobile, for which he was to be allowed $600 as a trade-in; that he was to pay $50 in cash and was to borrow $1600 from the Loan Company; and that he was to pay this $1600 to the Sales Company and thus complete the sale for cash, as agreed upon between the Sales Company and Baker. In short, the sale to Baker by the Sales Company was consummated as a cash sale, and was so known to the Sales Company, the Loan Company, and Baker. This was testified to by both Baker and the salesman for the Sales Company who worked up the trade, and also by the general manager of the Sales Company who handled all the papers and finished the trade for the Sales Company. Baker and the Sales Company both informed the Loan Company as to what the sale was and that it was for cash, and Baker left it to the Loan Company, in general conformity with what their trade was, to fix up the papers to secure their loan of $1600 to him on the truck which he had purchased for cash from the Sales Company. It being about dinner time when Baker was to sign the loan papers, the manager of the Loan Company stated to Baker: that the person who usually filled out such forms under such circumstances was absent, and for him [Baker] to sign the printed forms, which they presented to him with only printed matter therein, and they would fill out the blanks left in them—to wit, for inserting the other party's name, for inserting the total amount of the purchase-price, the amount of the loan due, the amount of the monthly installments and the time when they were payable; and that the Loan Company would fill these blanks in as authorized by Baker. These forms with only the printed matter were signed by Baker. A check signed by the Loan Company by Gisi was sent to the Sales Company, describing the truck and reciting that it was for *the full purchase price* of the truck in question. The Loan Company requested the Sales Company to execute a *straight or unconditional bill of sale* to Baker which was done. It seems to us that thereupon the property belonged to Baker, and that if the Loan Company wished to secure their loan, they could have taken a straight bill of sale from Baker and taken from him a conditional-sale contract for the security of the balance due on the loan. This would have been according to his directions and in conformity with his authorization as to the filling of the blanks. Baker returned to the Loan Company about 2 or 3 p. m. to get his copy of

the papers, but the Loan Company told him that they would have to charge him $947 instead of the 8 percent interest [$128] as agreed upon; and he, Baker, protested but finally agreed to this. However, they again put him off and told him that when the blanks were filled out, they would send him a copy of the papers, by mail, which he testified he was never able to get; and when the Loan Company undertook to exercise their rights under these blank forms, with the blanks filled out by them, the note which Baker said should have been made out to the Loan Company, and the conditional bill of sale which should have been made out to the Loan Company to secure its loan, were for the first time discovered by Baker to be made out to the Sales Company, for the blanks in the note were so filled out as to state that he promised to pay the Sales Company $2547 in 12 monthly installments of $212.25, and the conditional-sale contract was filled out so as to make the Sales Company the grantee and the purchase-price $2850; $1250 being paid on delivery, and $2547 to be paid in 12 monthly installments of $212.25 each. Baker also testified that he had spent $311.80 on tires, and more than $1180 for repair work and improvements during the period of a couple of months in which he operated said truck. He introduced most of the bills to substantiate this amount. Farr, the sales manager of the Sales Company, testified in part as follows: "We never had any agreement that P. & G. Sales & Service was to retain title to the truck. I was part owner and manager of P. & G. Sales & Service, and I was the one that had charge of this deal. I never made any agreement with anyone to take a retention-of-title contract in the name of P. & G. Sales & Service for $2547, payable $212.25 a month. I never agreed that Mr. Baker should sign a statement to P. & G. Sales & Service reciting that 'I have this day, December 10, 1943, purchased and received of the P. & G. Sales Company, hereinafter called vendor, a 1941 Ford, open-top GMC tractor automobile, Factory No. 99 T 271595, on which I owe $2547 as evidenced by an agreement and note executed contemporaneously herewith. Title to the above to remain in vendor until the balance is paid.' Mr. Baker never made any such agreement with the P. & G. Sales and Service through me;" and that, at the time he made out the straight bill of sale to Baker, the printed forms in question were signed by Baker, but the blanks in question were not filled in, and they were

indorsed by the Sales Company per him in blank without recourse, as his company had received all the money due it and the transaction as to his company was closed and it had no further interest in the matter; and that such indorsement would in no way affect the liability of his company. The defendant introduced a "Statement of Borrower" as prescribed by the board of governors of the Federal Reserve System under its "Regulation W," a statement by the Loan Company in writing, which referred to the transaction as a loan, not a purchase.

Gisi, the manager of the Loan Company, claimed and testified that the blanks were filled out in the papers before Baker signed them and delivered them to the Loan Company. It is contended that the undisputed evidence disclosed that the printing on the conditional-sale contract which Baker admitted signing was the usual printed form for such a contract, and not the usual printed form for a *loan contract*. If Gisi—after having requested a *straight* bill of sale to Baker from the Sales Company with the statement therein that the purchase-money had been paid in full by Baker to the Sales Company—had merely had Baker fill out a straight bill of sale to the Loan Company, and had then filled out the blanks in the printed forms as directed by Baker, his papers would have been in the usual form.

The defendant in error contends that he tendered the two monthly payments which the Loan Company claimed were in default, within the 60-day period in question. He contends that the Loan Company was attempting—by the manner in which they filled in the blanks in the printed forms, which he had signed, contrary to his direction—to avoid responsibility for the usurious interest, in which Gisi thought he would be protected. Hence we think that the parol evidence in question was admissible to show that the alleged written contract had never had any inception, and to deny the existence of the alleged valid written contract, and not to contradict it. *Bray* v. *Comer Mercantile Company,* 32 *Ga. App.* 746 (124 S. E. 817); *Chicago Building & Mfg. Co.* v. *Butler,* 139 *Ga.* 816 (4) (78 S. E. 244).

It might be noted that the plaintiff in effect paid $650 in cash, $1180 in repairs and improvements, and $300 for tires for the truck in question, and $212.25 in cash as the first monthly installment, making a total of $2342.25. The defendant claims

that he paid an insurance premium of $345 for one year. Thus, the interest on the loan, and the insurance on the property in question, on which the Loan Company had made the loan to the plaintiff of $1600, was $947 plus $345, or $1292 "carrying charges." It might be further noted that the judge charged the jury that, "if you find for the plaintiff you would, gentlemen, of course, take into consideration any amount that defendant might have advanced for plaintiff's benefit in financing the purchase of the truck and trailer." Be that as it may, in a trover suit, such as the one here, in which a recovery is sought for the value of the property on the date of conversion, and hire, it has been said: "Where the vendor of personal property to which title is retained until it is paid for in full wrongfully deprives the vendee of possession, the vendor is guilty of conversion, and the vendee may maintain an action of trover against the vendor for the property. *White* v. *Dotson,* 41 *Ga. App.* 436 (153 S. E. 233); *Walker* v. *Ayers,* 47 *Ga. App.* 113 (169 S. E. 784). . . When the plaintiff elects to demand a verdict for damages alone, as she did in the present case, and the evidence shows that the interest of the plaintiff in the property at the time of the conversion is less than that of absolute ownership, the measure of damages will be the value of the plaintiff's interest therein, whatever it may be. *Holmes* v. *Langston,* 110 *Ga.* 861, 867 (2) (36 S. E. 251). Where the plaintiff in a trover action elects to take a money verdict, he may recover the value of the property at the date of the conversion, with interest from that date, or he may recover the value of the property at the date of the conversion, with a reasonable hire from that date to the date of the trial, if the property is of a character that hire may be recovered. *Smith* v. *Duke,* 6 *Ga. App.* 75 (2) (64 S. E. 292); *Garrett* v. *Atlanta Home Underwriters,* 35 *Ga. App.* 404 (133 S. E. 265); *O'Neill Mfg. Co.* v. *Woodley,* 118 *Ga.* 114 (44 S. E. 980)." *Douglas Motor Co.* v. *Watson,* 68 *Ga. App.* 335, 336 (22 S. E. 2d, 766).

In the instant case, there was testimony that on the date of the conversion the truck and trailer was of the value of $2300, and that the defendant, the vendor, had advanced on it $1600 to the buyer. This left the interest of the plaintiff in the truck at $700. In addition to this, there was evidence that the reasonable hire for the truck and trailer was $200 per month, and that the date

of the conversion was March 17, 1944, and the date of the verdict was April 19, 1945, a period of 13 months and 2 days—which, if accepted by the jury, would make a total of $700 plus $2600, or $3300. *Douglas Motor Co.* v. *Watson,* supra; *Roper Wholesale Grocery Co.* v. *Faver,* 8 *Ga. App.* 178 (68 S. E. 883); *Maryland Casualty Co.* v. *Smith,* 44 *Ga. App.* 840 (163 S. E. 247). Thus, if we follow the rule for measuring the plaintiff's damages as stated in *Douglas Motor Co.* v. *Watson,* supra, the jury were authorized to allow the plaintiff hire in addition to his interest in the truck and trailer, and the verdict of $2000 was within the range of the evidence. We think that the judgment of the court below should be affirmed.

There being a dissent in the division of this court to which this case was originally assigned, the case was considered and decided by the court as a whole, pursuant to the act of the General Assembly, approved March 8, 1945 (Ga. Laws, 1945, p. 232).

*Judgment affirmed. Sutton, P. J., Felton, Gardner, and Parker, JJ., concur.*

BROYLES, C. J., dissenting. The evidence disclosed the following facts: Baker bought the property from P. & G. Sales and Service, and signed a note promising to pay the purchase-price in 12 monthly installments of $212.25 each. The conditional-sale contract entered into by Baker and the seller provided that the installment payments were secured by a retention of title to the property sold, with the right reserved to the seller to retake possession of it at any time after a default in the payment of any of the monthly payments and to sell the property without any process. The note and the conditional-sale contract were indorsed over to the defendant by P. & G. Sales and Service, "Without recourse," the defendant paying $1600 therefor. The undisputed oral testimony showed that Baker had paid only one installment and was in default for several installments when the property was taken possession of by the defendant. Baker was allowed to testify that he had signed the note, the conditional bill of sale, and the other papers, when they were blank and contained no writing upon them, but had only printed words thereon, leaving blank spaces to be filled in later. He further testified: that he bought the property on a cash transaction from P. & G. Sales and Service, and needed $1600 to pay the purchase-price thereof;

that he procured that amount from the defendant as a loan, and that he signed the note, the conditional bill of sale, and the other papers in the defendant's office when they were blank, except for some printed words thereon; and that he and the defendant's agent entered into a verbal agreement, at or before he signed the blank papers, that the name "P. & G. Sales and Service" should not appear in the note or contract as the payee, and that, in the event he should be away from Atlanta when any installment payment became due, he would not be required to pay it until he returned to the city, provided he returned within 30 or 60 days. The undisputed evidence disclosed that the printing on the conditional-sale contract, which Baker admitted signing, was the usual printed form for such a contract, and not the usual printed form for *a loan contract*. Baker testified that he could read and did see the printed words on the paper that he signed. The above-stated testimony was objected to on the ground that it varied, contradicted, and added to the terms of the written contract between the parties. In the absence of fraud, accident or mistake, a contemporaneous parol conditional stipulation at variance with or inconsistent with the writings will not be annexed. *Probasco*.v. *Shaw*, 144 *Ga.* 416 (87 S. E. 466). "A fraud which will relieve from a contract a party, who can read, must be such as prevents him from reading it." *Lewis* v. *Foy*, 189 *Ga.* 596 (6 S. E. 2d, 788); *Wynn* v. *First Nat. Bank*, 176 *Ga.* 218 (2) (167 S. E. 513). In the instant case, no fraud was alleged or proved, and the evidence failed to show any confidential relationship between the parties, or any emergency or necessity that caused Baker to sign the papers before the blanks therein had been filled out.

Furthermore, it is obvious that, if the blank spaces had been filled out in accordance with the alleged oral agreement, the filled-in matter would have been incompatible with the printed forms on the papers, which were the usual printed forms for a conditional-sale contract. Moreover, the alleged oral agreement that Baker was to have 30 or 60 days of grace in which to pay past-due installments, *if incorporated into the written contract, would have been in direct conflict with the terms and spirit of that contract.* "Parol evidence is admissible to prove portions of an agreement not inconsistent with the writing, where the written instrument does not purport to contain all the stipulations of the agreement; but

before parol evidence can be received to show a collateral agreement, it must appear that the contract is incomplete and that what is sought to be shown by parol in no way conflicts with what is contained in the writing. The provision of law which permits parol proof in cases of apparent incompleteness in the statement of the obligations of the parties denies any such proof which may vary the written terms or impose any terms dependent upon oral agreements prior to the contract." *Renfroe* v. *Alden,* 164 *Ga.* 77 (137 S. E. 831). I think that the above-stated testimony of Baker was illegally admitted in evidence, and that the error requires a new trial of the case.

Furthermore, Baker was not entitled to recover the property sued for unless he had paid the defendant company the amount of money, or tendered payment thereof, which he owed it on the purchase-price of the automobile. The undisputed evidence was that Baker still owed the defendant a substantial amount of the purchase-price of the car when he filed this trover suit, and he could not in good conscience recover the car or its value without making restitution of the amount which he owed the defendant on the purchase-price of the car. *Williams* v. *Fouché,* 157 *Ga.* 227 (121 S. E. 217), and cit.; *Glover* v. *Green,* 96 *Ga.* 126 (22 S. E. 664).

The petition in the instant case contained no allegation that the amount still due the defendant had been paid, or that it had been tendered; and the evidence is silent on that subject.