**A. L. DENHAM, Plaintiff,**

v.

**SOUTHWESTERN BELL TELEPHONE COMPANY, Defendant.**

**Civ. No. 75–0504–D.**

United States District Court,
W. D. Oklahoma.

April 15, 1976.

Patrick Brown, Oklahoma City, Okl., for plaintiff.

Nancy Coats, Oklahoma City, Okl., for defendant.

## MEMORANDUM OPINION

DAUGHERTY, Chief Judge.

In this case the Plaintiff sues the Defendant for damages as a result of their rela-

tionship as a user (Plaintiff) of telephone service and a supplier (Defendant) of telephone service. The Plaintiff owns the Alamo Plaza Motel (Alamo) of Oklahoma City, Oklahoma and was personally responsible for its business telephone account with Defendant for telephone service at the Motel. Plaintiff also has a business telephone at his optometrist office and a residence telephone, both in Oklahoma City, Oklahoma.

█ The evidence reveals that the Alamo bill in February, 1975 was three months in arrears. The bill was $1,025.36. Service Representatives of Defendant had been unsuccessful in collecting the account. On February 26, 1975 the Defendant mailed Plaintiff a five-day suspension notice. On March 18, 1975 Mack McGuire, Defendant's Unit Manager for the area involved, called the Plaintiff to attempt collection. Plaintiff was advised that the Alamo telephone would be suspended if payment was not forthcoming. The Plaintiff said go ahead and suspend the service but that such action would only reduce his incentive to pay the bill. The Alamo telephone service was suspended on March 18, 1975.[1] But only for outgoing calls. By March 28, 1975 the Plaintiff had paid the Alamo bill in full by three installments. Service was then restored but the Defendant decided to require a $360.00 security deposit on the Alamo account.[2] A letter was written Plaintiff to this effect. It was later decided to request contracts on the Alamo telephone and the business telephone of Plaintiff in lieu of the aforesaid deposit.[3] Plaintiff's attorney revised the furnished contracts slightly, and they were returned to and accepted by Defendant. Plaintiff's business and residence telephones were never discontinued, however, in one conversation it appears that Defendant's Unit Manager advised that Plaintiff's business telephone, though not delinquent, was subject to suspension with his other business telephone, the Alamo telephone. This was a correct statement of the authority of the Defendant.[4] Plaintiff claims that the $360.00 deposit was not correctly fixed in accordance with Oklahoma Corporation Commission (OCC) rules or tariffs. The Defendant claims it correctly followed the prescribed OCC formula in fixing the amount of the deposit.[5] The head of the telephone department of the OCC testified that the deposit was correctly fixed under the prescribed formula based on account information furnished him by the

1. Rule 9(b)(1) of the Oklahoma Corporation Commission allows suspension of telephone service on notice for nonpayment of a bill as follows:

"(b) After Notice: A telephone company may refuse service, or terminate existing service to a customer pursuant to disconnect procedure provided in Rule 10, for any of the following reasons:
 (1) Nonpayment of a bill within the period prescribed by these rules."

2. This was authorized by Rule 8(a) of the Oklahoma Corporation Commission which provides as follows:

"(a) Security Deposit: A telephone company may require a customer to make a deposit in cash or in form of a letter of credit or security agreement adequately secured, for the sole purpose of guaranteeing payment for service received. The telephone company shall determine when such a deposit is required, and when it is returned to the customer."

3. The Defendant was authorized to require such contracts on these telephones by provisions in General Exchange Tariff, Rules and Regulations applying to all Customer Contracts on file with the Oklahoma Corporation Commission. Part II, covering Application for Service, provides in part as follows:

". . . The Telephone Company reserves the right to require application for service to be made in writing on forms supplied by it."

4. Rule 9(c) of the Oklahoma Corporation Commission provides:

"(c) Unpaid account: A telephone company shall not be required to provide service to an applicant who has not paid for prior telephone service rendered by a telephone company in the same or different location, *provided the service not paid for was the same class of service, and furnished to the same person or legal entity.*" (Emphasis supplied)

5. Oklahoma Corporation Rule 8(b) fixes the formula. It provides:

"(b) Amount of Deposit: The amount of the deposit shall not exceed an amount equal to two months' local exchange charges and two months' toll charges, determined by actual or anticipated usage. Where local exchange charges are billed in advance, the deposit shall include only one months' such charges."

Defendant. From the evidence the Court finds that the deposit was properly fixed. Moreover, this facet of the case loses significance in view of the deposit being replaced with the contracts which were revised and signed by the Plaintiff and accepted by the Defendant. The evidence is in dispute as to whether the Defendant threatened to discontinue Plaintiff's residence telephone. Plaintiff testified that Maguire made such a threat. Maguire denied doing so. Such disconnection would have been improper because the residence telephone is not of the same class as the Alamo business telephone. See Note 3. Maguire is only responsible for business telephone accounts, not residence accounts. The residence telephone was never disconnected. The Court finds that the weight of the evidence is to the effect that no such threat was made by Defendant. The Plaintiff's evidence was to the effect that Defendant's agent, Maguire, in his telephone calls was rude and abusive and that he hung up the telephone on a couple of occasions. Maguire denies such conduct. Plaintiff also complains of Defendant calling his optometrist office to collect the Alamo bill. However, this was the only place the Plaintiff could be contacted during business hours. The Court finds and concludes that the weight of the evidence supports the Defendant's position in these particulars. Plaintiff claims that he became quite upset by Maguire's calls and one in particular on a day when certain patients were in his office. Maguire denies making a call on said day. Defendant's records do not show a call that day. Plaintiff claims he eventually lost one of the patients and perhaps another. Plaintiff estimated he lost 37 hours of office time by reason of being upset by Defendant's calls. Plaintiff saw an osteopath, a close personal friend, on three occasions who prescribed a tranquilizer. Plaintiff testified that he is much improved now. The evidence reveals that nce reveals that during the time involved Plaintiff was having very serious financial difficulties with the Alamo Plaza Motel. These difficulties centered around the loss of significant business, personnel problems and a controversy with Oklahoma City over

water. To this may be added Defendant's delinquent telephone account. From the evidence and after observing the various witnesses and considering all the circumstances of the case, the Court is of the opinion and finds the Plaintiff's upset condition, irritability and medical attention were brought about by the financial problems he was having at the Alamo Plaza Motel rather than Defendant's effort to collect its past due telephone bill. There is no dispute that Plaintiff was the responsible person for the Alamo telephone account and that it was three months past due in February, 1975. Plaintiff had a right to attempt collection of the bill. Over a three month period only about six telephone calls are involved. This is not unreasonable as far as the Defendant is concerned. Plaintiff had a right to require a deposit. Plaintiff properly fixed the deposit and had a right to call for the contracts which Plaintiff revised, signed and returned.

 In this diversity case the law of Oklahoma applies. The rules, regulations and tariffs on file with the Oklahoma Corporation Commission also apply, have the effect of law and are binding on both parties in this litigation. *Teleco, Inc. v. Southwestern Bell Telephone Company*, 392 F.Supp. 692 (W.D.Okl.1974), affirmed 511 F.2d 949 (Tenth Cir. 1975), cert. den., 423 U.S. 1875, 96 S.Ct. 145, 46 L.Ed.2d 106 (1975). But as aforesaid the Court finds Defendant committed no rule or tariff violations.

Plaintiff alleges breach of contract by Defendant by threats and harassment and tariff violations. Plaintiff also asserts that Defendant acted arbitrarily and discriminated against him in their relationship and that under 79 Oklahoma Statutes §§ 4, 25 and 27 Plaintiff has a right of action against Defendant for damages for such arbitrary and discriminatory conduct. Plaintiff also cites *Prosser*, Law of Torts, 2d Ed. and 45 Am.Jur.2d p. 288 et seq. in support of the recovery of damages in tort for the intentional interference with Plaintiff's relationship with his patients and for the intentional infliction of mental or emo-

tional disturbance on the Plaintiff. Plaintiff also claims Defendant acted fraudulently, citing 15 Oklahoma Statutes §§ 57 et seq. and that the actions of Defendant were malicious. Plaintiff also seeks $3,000,000.00 in punitive damages. The Court recognizes these various bases for the recovery of damages as being appropriate under Oklahoma law when supported by evidence.

## BREACH OF CONTRACT

The parties had a contractual relationship. The OCC rules and tariffs were a part thereof. This relationship was breached by Plaintiff in not paying the Alamo telephone bill. The evidence does not establish that the Defendant breached the contract between the parties. It had a right to collect its past due account by reasonable means. Defendant had the right to suspend telephone service at the Alamo Plaza Motel. Defendant had the right to consider the suspension of Plaintiff's other business telephone service at his optometrist office. The Court does not believe that Defendant threatened to suspend the telephone service at Plaintiff's residence. Defendant had the right to demand of Plaintiff a deposit fixed by the appropriate formula, which the Court finds was substantially followed, and Defendant had the right to call for contracts on Plaintiff's two business telephones. The Court finds and concludes that Defendant did not breach the contract between the parties. Rather, the breach of the contract was by the Plaintiff in not paying the Alamo bill. Defendant's collection methods were not illegal nor were they arbitrary or discriminatory under the evidence. The Court finds the same to have been reasonably accomplished.

## STATUTORY TORT—79 Oklahoma Statutes §§ 4, 25 and 27

Defendant would appear to fall within the ambit of these statutes as it furnishes a public service. Should Defendant offer its service upon unreasonable terms or discriminate against a customer it would violate the statutory duty imposed upon it. Under the evidence presented, however, the Court finds and concludes that the Defendant has acted reasonably in all respects and has not discriminated against the Plaintiff. Defendant has not violated these statutes under the evidence herein.

## INTERFERENCE WITH PATIENT RELATIONSHIP

Plaintiff complains that Defendant called him at his optometrist office about the delinquent Alamo telephone bill. It was not improper for Defendant to call Plaintiff, the responsible person for the Alamo account, at his business location. This is where Plaintiff was present during business hours. The evidence fails to convince the Court of interference with Plaintiff's patient relations. Defendant never talked to a patient of the Plaintiff. Nor knowingly talked to Plaintiff in the presence of a patient. The evidence falls far short of showing that Defendant interfered with Plaintiff's patient relationship by simply calling Plaintiff and requesting payment of a past due telephone bill.

## INTERFERENCE WITH PLAINTIFF

The evidence does not show that Defendant interfered with Plaintiff. Had Plaintiff paid the Alamo bill, for which he was personally responsible, he would not have been called by Defendant for payment. Defendant had the right to call Plaintiff to collect its past due account for which Plaintiff was responsible and do so at his business office. The Court finds and concludes Defendant's telephone calls to Plaintiff to attempt collection of the past due account were proper and reasonable and did not interfere with Plaintiff's privacy.

## FRAUD

Plaintiff has completely failed to prove his charge of fraud against the Defendant. The essential elements of actionable fraud are set out in the case of *Lenn v. Miller*, 403 P.2d 458 (Okl.1965). Fraud must be proved by clear and convinc-

ing evidence. *Daubert v. Mosley*, 487 P.2d 353 (Okl.1971); *Steiger v. Commerce Acceptance of Oklahoma City, Inc.*, 455 P.2d 81 (Okl.1969). Plaintiff's evidence wholly fails to establish that Defendant has been guilty of fraud against him.

## MALICE

The Court finds and concludes that Plaintiff's evidence does not show or establish that Defendant acted maliciously in attempting collection of its past due telephone account with Plaintiff or in any of its other relations with Plaintiff. No evil intent has been established by the evidence in the opinion and judgment of the Court.

## PUNITIVE DAMAGES

As Plaintiff has not established his right to recovery of actual damages he may not recover punitive damages. *Moore v. Metropolitan Utilities Company*, 477 P.2d 692 (Okl.1970). Moreover, punitive damages are not recoverable as a matter of right. *Ft. Smith & W. R. Co. v. Ford*, 34 Okl. 575, 126 P. 745 (1912); 22 Am.Jur.2d, Damages § 240. The Court in its judgment would not consider awarding punitive damages in this case under the evidence, even if actual damages were shown.

In view of the foregoing findings of fact and conclusions of law and decisions of the Court, the action of Plaintiff should be dismissed. Plaintiff has not established a claim entitling him to any relief. An appropriate Judgment to this effect will be entered this date.