**In re SCHICK OIL & GAS, INC., Debtor.**

**SCHICK OIL & GAS, INC., By and Through its Trustee, Gregory L. MAHAFFEY, Plaintiff,**

**v.**

**FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Penn Square Bank, N.A., Defendant.**

**Bankruptcy No. 82–00247–A.**
**Adv. No. 82–103.**

United States Bankruptcy Court, W.D. Oklahoma.

Dec. 9, 1983.

Gregory L. Mahaffey and Michael J. Blaschke of Mahaffey, Gore & Brickell, Oklahoma City, Okl., for trustee.

Joe E. Edwards and Michael A. Rubenstein of Edwards, Roberts & Winterstein, Oklahoma City, Okl., for FDIC as Receiver of Penn Square Bank, N.A.

G. Blaine Schwabe, III of Mock, Schwabe, Waldo, Elder, Reeves & Bryant, Oklahoma City, Okl., for Michigan Nat. Bank.

David Kline of Kline & Kline and Murray Cohen of Cohen & Pluess, Oklahoma City, Okl., for debtor.

Eugene P. Ledbetter, Jr., Oklahoma City, Okl., for official creditors' committee.

## MEMORANDUM OF DECISION AND ORDER

RICHARD L. BOHANON, Bankruptcy Judge.

This matter comes on for hearing upon the Trustee's motion to avoid the lien and mortgage of the Federal Deposit Insurance Corporation (FDIC), as Receiver for Penn Square Bank, N.A. Having heard the testimony of various witnesses, reviewed the briefs of the parties and considered all matters of record, we make the following findings and conclusions with respect to the motion.

The debtor, Schick Oil & Gas, Inc., operated as an Oklahoma corporation and was formed in 1980 for the purpose of exploring for and producing oil and gas. The debtor received its primary funding from credit extended by Penn Square Bank, N.A., whose assets are now held in receivership by the defendant, FDIC.

In the spring of 1981, Schick Oil & Gas, Inc., executed two promissory notes with Penn Square Bank. Note # 26553 was in the amount of $650,000 and the record indicates the note was for drilling and completion costs on four wells in Major County. The face of the note shows as security previously pledged oil and gas mortgages. During this period there existed approximately $574,000 in overdrafts in the Schick

account. Testimony at trial showed that the overdrafts would be covered due to assurances given the president of Schick by a loan officer of Penn Square Bank which was at the urging of a Schick creditor.

A second note was executed in April of 1981 and this note, number 26928, was in the principal amount of $3,635,000. The face of this note indicates it was secured by new oil and gas mortgages and previously pledged mortgages. The record also indicates this note was for interim financing of a pending sale, and following that sale all but $500,000 of note # 26928 was paid off.

In the fall of 1981, Schick executed a third promissory note # 28925 in the amount of $1,500,000 and this note represented a renewal of both note # 26553 and 26928, plus additional funds advanced to Schick. This note indicates it was executed for the purpose of interim financing until the sale of 5 wells to another entity was complete and as security the note shows "oil and gas mortgages." The debtor disputes the notation on the note regarding the 5 wells as being in error.

The Trustee asserts that Note # 28925 and the mortgage filed in January, 1982 were both signed in blank and that Penn Square, subsequent to the debtor's signature, filled in the data as it stood on day of filing. In this same connection, the note and mortgage were attested to by an employee of Schick Oil & Gas, at the direction of Carol Schick, the corporate secretary.

The trustee has moved to avoid the debtor's transfer of a security interest in its oil and gas properties pursuant to 11 U.S.C. § 547. This section provides in pertinent part:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between 90 days and one year before the date of the filing of the petition, if such creditor, at the time of such transfer—

(i) was an insider; and

(ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

Essentially the issues before the Court are whether the debtor was involvent on the date of the transfer; whether the bank was an "insider" for purposes of § 547; and the effect of the blank mortgage. These issues must be found in favor of the trustee for him to prevail, and the Court will separately address these questions.

As to the matter of insolvency of the debtor, or the bank's reasonable cause to believe the debtor was insolvent, the trustee stated that in March, 1981 the bank was informed of debtor's limited operating capital and inability to pay bills. He further urges that the bank's immediate demand for the mortgage and concern for its secured status evidences apparent knowledge of the insolvency, especially in light of the alleged signing in blank of the mortgage. But these allegations are not enough and are insufficient to meet the insolvency test under the Bankruptcy Code. A showing of mere suspicions of insolvency will not do. *In re Gruber Bottling Works, Inc.*, 16 B.R. 348 (Bkrtcy.E.D.Penn.1982). Nor does inability to pay debts when they become due, standing alone, constitute a condition of insolvency. *In re Utrecht Coal Co., Inc.*, 63 F.2d 745 (2d Cir.1933).

Section 101(26) of the Bankruptcy Code defines insolvency as a financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation. This standard is traditionally characterized as the "balance sheet" test of insolvency. *In re Gruber Bottling Works, Inc., supra; In re National Buy-Rite, Inc.,* 7 B.R. 407 (Bkrtcy.N.D.Ga. 1980); *see generally* 4 L. King *Collier on Bankruptcy* ¶ 547.26, at 547–94 (15th ed. 1983). The burden of proof on insolvency, as well as each element of a preferential transfer, rests with the trustee. *In re Denaburg,* 7 B.R. 274 (D.C.N.D.Ala.1980); *see also American National Bank & Trust Co. of Chicago, Illinois v. Bone,* 333 F.2d 984, 987 (8th Cir.1964).

The record of this case demonstrates that proof of insolvency is not clear, but if the debtor was not solvent the bank had no reasonable cause to believe it was not. Only one financial statement was tendered to the bank and it was made as of February 1, 1980. This statement showed the debtor's net worth to be $101,500. The various loans advanced to the debtor were apparently made without reviewing the debtor's financial condition, nor did the financial status of the debtor appear important to the bank. In addition, an unaudited balance sheet as of March 31, 1982, offered by the trustee establishes the debtor's total equity to be $656,223.36. Based on this financial data and the oil and gas engineering report used by the debtor in preparing his bankruptcy schedules showing reserve values of some $3.7 million, there has been demonstrated no reasonable cause to believe the debtor insolvent.

The Trustee asserts next that the bank was an "insider" as that term is used for preference purposes in § 547. The Code at 11 U.S.C. § 101(25) defines an insider in the context of corporations as:

"(B) if the debtor is a corporation
   (i) director of the debtor;
   (ii) officer of the debtor;
   (iii) person in control of the debtor;
   (iv) partnership in which the debtor is a general partner;
   (v) general partner of the debtor; or
   (vi) relative of a general partner, director, officer, or person in control of the debtor;"

The Trustee supports his proposition by citing the Court to *Matter of Montanino,* 15 B.R. 307 (Bkrtcy.D.N.J.1981). Further he notes that the term includes "persons in control of the debtor" and references the legislative history of the Act prefacing the definition section. The committee note to this section states "[a]n insider is one who has a sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at arms length with the debtor." S.Rep. No. 989, 95th Cong., 2d Sess. 25 (1978) and H.R.Rep. No. 595, 95th Cong. 1st Sess. 312 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5810, 6269. This language is then followed by the definition which appears in the Code.

For his position that the bank was an insider, the Trustee relies on subsection (25)(B)(iii) that the bank was a person in control of the debtor. He urges that the dealings between the debtor and the bank were not at arms length since Schick's financial position placed it in an inferior bargaining position and the relationship was closer than that of a debtor and a disinterested creditor. However, "even though the Bank may have obtained some concessions from the debtor based on the loan transaction between them . . . [no] evidence [exists which raise] these concessions to the level of a special relationship which would characterize the Bank as an 'insider' for purposes of § 547." *Matter of Jefferson Mortgage Co., Inc.,* 25 B.R. 963, 970 (Bkrtcy.D.N.J. 1982); *see also In re Castillo,* 7 B.R. 135 (Bkrtcy.S.D.N.Y.1980). Simply because the bank had financial power over the debtor does not make the bank an insider for that reason. The type of control alluded to by the trustee was an incident of their debtor-creditor relationship. *Matter of Jefferson Mortgage Co., Inc., supra.* To show control facts must be presented which demonstrate a means of restraint or authority greater

than that here. *Compare In re T.E. Mercer Trucking Co.,* 16 B.R. 176 (Bkrtcy.N.D.Tex. 1981) and *In re American Lumber Co.,* 5 B.R. 470 (D.Minn.1980) *with Matter of Montanino, supra.*

Moreover, we think the trustee's reliance on *Matter of Montanino* is misplaced for the reason that case deals with a different subsection of § 101(25) than that under consideration here. *Montanino* involved the domestic relationship between various *individuals* and who might constitute a "relative" for purposes of being an insider. Here we deal with a *corporation* and the Code specifies different factors for our consideration. For all the foregoing reasons we find that the relationship was one of an arms length debtor-creditor situation and that there is inadequate proof that the bank was an insider for purposes of § 547.

■ The next point raised by the Trustee is that the mortgage obtained by the bank is not properly perfected and, thus, voidable since an employee of Schick Oil and Gas signed the document rather than the corporate secretary. We disagree. At trial Carol Schick testified that she was corporate secretary for the company. Further, it was her testimony that she, while out of town, authorized the company secretary, Linda O'Hagan, to sign her name to the mortgage document and that Linda had not acted improperly in so doing. In addition, the document had affixed to it the corporate seal as well as the president's signature. *Cf.* 18 O.S.1981 § 1.242. There was absolutely no reason why the bank was not entitled to rely on this document.

■ In order for an interest in real estate transferred by a corporation to be valid state law only calls for "substantial compliance" with the statute. *See* 16 O.S.1981 §§ 91–95. *See also Garton v. Hudson-Kimberly Pub. Co.,* 8 Okl. 631, 58 P. 946 (1899). By all indications, the purpose of the statute having been served we find that there has been substantial compliance to constitute a valid mortgage. *Cf. Kasner v. Stanmire,* 195 Okl. 80, 155 P.2d 230 (1944).

■ The final argument which we address is the effect of a signature on a document in blank. The trustee asserts the argument that such a document should be void on its face as being an invalid mortgage instrument and insufficient for purposes of satisfying conditions under the Uniform Commercial Code. However, the trustee's position goes too far in this regard. The great weight of case law clearly suggests that a valid mortgage may exist under circumstances such as those here so long as certain bounds of authority are not breached. *See e.g., Glasscock v. Farmers Royalty Holding Company,* 152 F.2d 537 (5th Cir.1945); *Commercial Auto Loan Corporation v. Baker,* 73 Ga.App. 534, 37 S.E.2d 636 (1946); *American National Bank of Wetumka v. Hightower,* 184 Okl. 294, 87 P.2d 311 (1939); *State v. Matthews,* 44 Kan. 596, 25 P. 36 (1890); *see also* ANNOT., 11 A.L. R.2d 1372 (1950) (and cases cited therein). The rule is the same under the UCC. *See In re Allen,* 395 F.Supp. 150 (D.E.D.Ill. 1975). From this line of authority we find no difficulty concluding that a mortgage instrument signed in blank by the mortgagor and subsequently completed by the mortgagee may, nevertheless, be valid and enforceable. Having reached that conclusion the relevant consideration becomes whether there has been a breach of the conferred authority.

Since the debtor executed the mortgage instrument in blank and forwarded it to the bank, *ipso facto* the requisite authority was conferred which would allow the bank to fill in the instrument. At the hearing there was no evidence of exactly *to what extent* the bank was given authority to make additions to the instrument.

Both the Bank and the debtor undertook acts which at best must be regarded as commercially questionable. Indeed, in its argument to show that the bank was an insider the trustee practically admits that there existed quite a liberal relationship between the parties. The testimony indicates the authority of the bank was rather broad. To now assert that filling in the blanks of the instrument by the bank was beyond the conferred authority would be

wholly inconsistent and unacceptable. Consequently, we are compelled to find this argument unconvincing. Due to our holding on the issues already discussed it is unnecessary to consider other arguments raised by the Trustee.

Accordingly, for the reasons outlined above we conclude that the trustee has not proved there was a voidable transfer under § 547. Therefore, the motion of the Trustee to avoid the lien and mortgage of FDIC shall be and hereby, is denied.

Further, in light of our decision here we also grant the counterclaim of FDIC for relief from the automatic stay. It has been stipulated that should the Court find the mortgage of FDIC valid that the debtor lacks equity. This burden having been met by the FDIC makes it incumbent upon the debtor to demonstrate and offer some form of adequate protection. *See* 11 U.S.C. § 362(g). Since no form of adequate protection has been offered it is appropriate that the automatic stay be lifted.

This decision constitutes the findings of fact and conclusions of law required by BR 7052.

Judgment will be entered separately.