**In re BELCO, INC., Debtor.**

**Bankruptcy No. BK–83–00493–B.**

United States Bankruptcy Court,
W.D. Oklahoma.

March 27, 1984.

Mary M. Bruehl and Susan P. Moran, of Emery, McCandless, Gaitis and Bruehl, P.C., Oklahoma City, Okl., for Belco, Inc.

John W. Swinford, Jr., of Hastie & Kirschner, Oklahoma City, Okl., for The First National Bank and Trust Co. of Oklahoma City.

## MEMORANDUM DECISION AND ORDER

ROBERT L. BERRY, Bankruptcy Judge.

This matter concerns an objection to the use of cash collateral and application for adequate protection. A brief discussion of the procedural history of this matter is as follows.

The debtor, Belco, Inc., (hereinafter "Belco") filed its initial voluntary petition under Chapter 11 of Title 11, U.S.C. on January 7, 1983. Pursuant to certain negotiations to be more fully described below, Belco dismissed its voluntary proceeding on January 25, 1983. Belco subsequently filed a second voluntary Chapter 11 proceeding on

February 24, 1983. In this second proceeding, The First National Bank and Trust Company of Oklahoma City (hereinafter "FNB") filed an objection to use of cash collateral and application for adequate protection pursuant to 11 U.S.C. §§ 361 and 363, on March 10, 1983. The Court had continued the matter on several occasions upon the request of Belco. This matter came on for hearing on September 29, 1983. Difficulties with proceeding were again encountered. Nonetheless, FNB admitted into evidence by way of stipulation certain exhibits numbered 1 through 13. (These exhibits are attached to FNB's objection and application). The matter was again continued. Prior to the date of the continued hearing, FNB and Belco agreed that the matter could be submitted to the Court on stipulation. On December 2, 1983, the stipulation was filed in this Court. A copy of this stipulation is attached to this memorandum and made a part of it. The parties have submitted briefs and the matter is now ripe for resolution.

Section 363 of the Bankruptcy Code prohibits the debtor in possession, pursuant to 11 U.S.C. § 1107, to use cash collateral unless:

(A) each entity that has an interest in such cash collateral consents; or

(B) the court, after notice and a hearing authorizes such use, sale, or lease in accordance with provisions of this section.

11 U.S.C. § 363(c)(2).

■ Should a determination be made that the debtor is entitled to use cash collateral, 11 U.S.C. § 363(e) provides that the interest of a secured party be adequately protected. "Adequate protection" is not defined in the Code. Rather, its determination is to be made on a case by case basis. *In re San Clemente Estates,* 5 B.R. 605 (Bkrtcy.S.D.Cal.1980). "[A]dequate protection is a flexible concept which requires a court to make decisions on a case by case basis, after full consideration of the peculiar characteristics common to each proceeding." *In re American Mariner Industries, Inc.,* 27 B.R. 1004, 1014 (Bkrtcy.

9th Cir.1983), quoting *In re Monroe Park,* 17 B.R. 934, 940 (D.D.Del.1982). Extensive discussion on the concept may be found in *In re Alyucan Interstate Corp.,* 12 B.R. 803 (Bkrtcy.D.Utah 1981).

This Court has previously recognized that the concept of adequate protection incorporates contradictory realities. *In re Southwest Bending, Inc.,* BK–83–00351, (Bkrtcy.W.D.Okl. May 11, 1983). "One is that the use of cash collateral is essential to the success of reorganization. The other is that the use necessarily diminishes the value of the security bargained for by the creditor and the secured position ought not to be allowed to deteriorate." *Id.* at ___, quoting *In re Heatron, Inc.,* 6 B.R. 493, 494 (Bkrtcy.W.D.Mo.1980).

Belco has a current indebtedness owing to FNB in the approximate amount of 1.5 million dollars with interest. This debt is secured by, *inter alia,* a security interest in all of Belco's accounts receivable, accounts, and contract rights (hereinafter the "security interests"). There is no dispute that these security interests constitute cash collateral pursuant to § 363(a) of the Code. H.R.Rep. No. 595, 95th Cong., 1st Sess. 344–5 (1977); S.Rep. No. 989, 95th Cong., 2nd Sess. 55 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787.

■ As a preliminary argument, Belco states "Bank's [FNB] assertion that it is not adequately protected is ludicrous in view of the fact that Bank received" certain payments from Belco prior to the commencement of the first voluntary proceeding. Brief of Belco at 2. The mere fact that a creditor received payment prior to the filing of bankruptcy is not, nor can not, be sufficient to meet the burden of proof on the issue of adequate protection. The Code specifically states that a request for adequate protection may be made "at any time". 11 U.S.C. § 363(e). Accordingly, this contention is without merit.

Having dispensed with this argument, we address the real issue before us. Belco has framed it in the following manner. The issue is the validity of the security

interests of FNB; that the advances made pursuant to the security interests are preferential transfers.

■ In this regard, Belco asserts that the security interests of FNB are voidable under that portion of 11 U.S.C. § 502 relating to claims unenforceable under state law. As FNB correctly points out, this matter is not before the Court on an objection to a claim, hence reliance on § 502 is questionable. The issue as framed by Belco in fact seems to preclude § 502 applicability. We will eschew this point and address Belco's main contention: Belco's claim that it was fraudulently induced to dismiss the first voluntary petition.

■ Both parties have cited us to cases which detail the elements of actionable fraud as required by the courts of Oklahoma. We need not reproduce those elements here. For a detailed definition of actionable fraud, see *State ex rel. Southwestern Bell Tel. Co. v. Brown*, 519 P.2d 491, 495 (Okl.1974). *Accord Taylor v. Parker*, 611 P.2d 1131 (Okl.1980). Suffice to say that the elements must be proven by clear and convincing evidence. *Denham v. Southwestern Bell Tel. Co.*, 415 F.Supp. 530 (D.W.D.Okl.1976); *Steiger v. Commerce Acceptance of Okla. City, Inc.*, 455 P.2d 81 (Okl.1969).

Belco's allegation is that FNB's actions inducing Belco to voluntarily dismiss its first reorganization proceeding constitute actionable fraud. Such inducement was purportedly made by FNB in connection with an agreement entered into between Belco and FNB (hereinafter the "Agreement"). A copy of this Agreement is attached to this memorandum and made a part of it.

■ According to Belco, the following constitute fraudulent conduct on the part of FNB: the execution of the Agreement as inducement for Belco to dismiss the first proceeding; the extension of an interest free line of credit pursuant to the Agreement and the seizure, within two days of the dismissal, of all the funds which were the subject of the Agreement. Were it not for reliance on the Agreement, Belco argues, the first proceeding would not have been dismissed and the security interests would have fallen within the ninety day preference period and therefore voidable pursuant to 11 U.S.C. § 547.

In light of these allegations, a review of the Agreement itself is mandated. Numerical ¶ 1 of the Agreement provided that Belco would dismiss its first Chapter 11 proceeding and would sell all of its interest in and to Atrium Towers, Ltd., the proceeds of said sale to be immediately paid by Belco to FNB (numerical ¶ 2). Thereafter, FNB was to establish a line of credit funded by the aforementioned sale together with the proceeds of the sale of a certain computer and certain furniture (numerical ¶ 3). Once the line of credit was established, FNB, in its sole discretion, could make loans from the funds to Belco (numerical ¶ 4). The Agreement specifically states that any decision as to whether to loan or not to loan to Belco is totally discretionary with FNB (numerical ¶ 5).

Having previously noted and reviewed the required elements of actionable fraud and the burden of proof thereof, we fail to see how the Agreement, standing alone, constitutes fraudulent representations on the part of FNB. Belco alleges that FNB misrepresented its intent to loan to Belco from the fund generated under the Agreement; however, the Agreement clearly provides that any decision to loan is totally discretionary with FNB. Belco alleges that FNB fraudulently "seized" the proceeds of the fund generated under the Agreement; however, the Agreement expressly provides that said funds were to be immediately paid to FNB by Belco.

■ Belco has further alleged that certain oral representations were made by FNB concurrently with the execution of the Agreement. Ordinarily, evidence of oral negotiations either proceeding or contemporaneous with the execution of a written agreement is not admissable to vary the terms thereof; however, when it is alleged that false and fraudulent representations were made to induce the execution of the

agreement and to procure the same, but for which representations the obligation would not have arisen, it has been held that parol evidence in support of such allegations is admissible to prove fraud and to vitiate the agreement. *Oklahoma Company v. O'Neil*, 440 P.2d 978 (Okl.1968). *See also, Storck v. Cities Serv. Gas Co.*, 575 P.2d 1364 (Okl.1978) (circumstances leading up to signing the instrument and extrinsic facts showing interpretation parties put upon the writing are all admissible). Aside from the bald allegations of oral fraudulent representations, however, the Court has not been presented with an iota of substantive evidence, parol or otherwise which would support such an allegation. We can not, therefore, find that the Agreement provides a basis for fraud. Accordingly, the security interests are valid and enforceable.

■ Belco next argues that the preferential transfer period should be extended to one year, alleging that FNB was an insider of Belco with reasonable cause to believe the debtor insolvent at the time the security agreements of October 12, 1983 and October 20, 1983, (hereinafter the "security agreements") were executed. (FNB exhibits 9 and 10). Belco alleges that FNB was an insider because "weekly meetings were taking place between representatives of Bank [FNB] and representatives of Belco during the fall of 1982." Brief of Belco at 9. For the proposition of the insolvency of Belco, Belco cites us to the deposition of Barry J. Woods, a FNB vice president, wherein when asked as to the factors considered when requests by Belco for additional borrowing were denied, states: "[t]he deteriorating financial condition of the company [Belco] as of September, the deteriorating management structure of the company, the inability of the company to find long-term financing for their new office warehouse, the discovery of problems on bonded jobs that were previously unknown to us."

While the Bankruptcy Code leaves certain terms undefined, viz. "adequate protection", it does provide a definition of "insider". It includes,

(B) if the debtor is a corporation—
　(i) director of the debtor;
　(ii) officer of the debtor;
　(iii) person in control of the debtor;
　(iv) partnership in which the debtor is a general partner;
　(v) general partner of the debtor; or
　(vi) relative of a general partner, director, officer, or person in control of the debtor;

11 U.S.C. § 101(25). For its position that FNB was an insider, Belco relies on subsection (25)(B)(iii), that FNB was a person in control of Belco. The control which FNB allegedly exerted was due to the presence of a "lock box" system. In the previously mentioned deposition of Barry J. Woods, the purpose and function of a "lock box" was described as follows:

The lock box is a system whereby checks that are sent to Belco, rather than going to the company first, being processed and then sent to the bank for deposit. The checks are received at the post office under a special zip code. Those items are taken directly to the bank where checks are deposited into the customer's account and then the documentation accompanied those payments are sent to the company.

So in a nutshell it is a system whereby payments are speeded up a day, sometimes two days—checks, not payments—checks are speeded up. Belco was on the system. I don't have the exact dates as to when they went on or off, but they were on it for all of 1982 and were taken off either late or early '83.

This Court has recently held that simply because a bank possessed financial power over the debtor, that fact alone does not make the bank an insider for that reason. *In re Schick Oil & Gas, Inc.*, 35 B.R. 282 (Bkrtcy.W.D.Okl.1983). Control may be a "status" as well as an "activity". *See Gilbertville Trucking Co. v. United States*, 371 U.S. 115, 83 S.Ct. 217, 9 L.Ed.2d 177 (1962). In a bankruptcy context this has evolved into the concept of "latent" control.

See e.g., *In re T.E. Mercer Trucking Co.,* 16 B.R. 176 (Bkrtcy.N.D.Tex.1981) (extensive creditor control evidenced by the loan agreements suggests that the debtor corporations were mere instrumentalities or the alter ego of the creditor). *Cf. In re Am. Lumber Co.,* 5 B.R. 470 (D.D.Minn.1980) (evidence of creditor control is overwhelming).

After a review of the function of a "lock box", we remain unconvinced that FNB was an insider with control over Belco. FNB possessed no stranglehold on Belco so as to render Belco powerless to act independent of FNB. If anything, use of a "lock box" was a stratagem which was beneficial to Belco. In order to show control the Court must be presented with facts which evidence a means of restraint or authority greater than that here.

■ As to the matter of insolvency of Belco or FNB's reasonable cause to believe Belco was insolvent, Belco relies on the previously quoted response of Barry J. Woods concerning the "deteriorating financial condition" of Belco. But this statement is not enough and is insufficient to meet the insolvency test under the Bankruptcy Code. A showing of a mere suspicion of insolvency will not do. *In re Gruber Bottling Works, Inc.,* 16 B.R. 348 (Bkrtcy.E.D.Penn.1982).

■ Section 101(26) of the Code defines insolvency as a financial condition such that the sum of such entity's debts is greater than all such entity's property, at a fair valuation. This standard is traditionally characterized as the "balance sheet" test of insolvency. *See generally* 4 L. King, *Collier on Bankruptcy,* ¶ 547.26, at 547–99 (15th ed. 1983). The burden of proof on insolvency, as with each element of a preferential transfer, rests with the trustee/debtor in possession. *Denaburg v. Post Welding Supply Co., Inc.,* 7 B.R. 274 (D.C.N.D.Ala.1980); *In re Gruber Bottling Works, Inc., supra.*

The record before us demonstrates that proof of insolvency is not clear. Assuming, *arguendo,* Belco was insolvent, the statement of Mr. Woods is not indicia that FNB had reasonable cause to believe that such was the case. For all the foregoing reasons we find that FNB was not an insider of Belco with reason to believe that Belco was insolvent for purposes of § 547.

■ As its final proposition, Belco urges that the first voluntary proceeding be "tacked on" to the second voluntary proceeding owing to FNB's alleged "unconscionable" conduct and the security agreements accordingly set aside pursuant to § 547. "[H]ad it not been for the fact that Bank [FNB] lured Belco" into executing the Agreement and thereby dismissing the first proceeding, the security agreements could have been avoided as preferential transfers. Brief of Belco at 11.

If indeed the Agreement was the bait which lured Belco out of the protective lair of its first voluntary proceeding, we have already determined that the Agreement speaks for itself. We are presented with no facts which would indicate an element of unconscionability in the execution of the Agreement. Belco chose to voluntarily dismiss it first proceeding. It must now live with the consequences of such action.

■ FNB's security interests in Belco's cash collateral are therefore valid and enforceable. The Court has not been presented with any evidence that the security interests are either invalid or unperfected. Accordingly, FNB's objection to the use of cash collateral and application for adequate protection shall be and hereby, sustained.

Belco has not presented the Court with any proposal for adequately protecting FNB's cash collateral. Belco is hereby directed to present this Court with such a proposal within thirty days of entry of judgment. Should Belco fail to present a proposal within this thirty day period, it shall cease to use the cash collateral of FNB without further order of this Court. Pursuant to B.R. 7052 this memorandum decision and order constitutes the findings of fact and conclusions of law.

An appropriate judgment will be entered.