758 F.2d 1000
 Bankr. L. Rep. P 70,390, 40 UCC Rep.Serv. 1480
 David G. GRAY, Trustee, Appellant,
and
A. Wayne Ingle and William Jerry Page t/d/b/a Ingle-Page
Enterprises, Inc., Plaintiffs,
v.
GIANT WHOLESALE CORP., a Tennessee Corporation, Appellee,
v.
Joyce P. INGLE and Joanna W. Page, Third-Party Defendants.
 No. 84-1439.
 United States Court of Appeals,
Fourth Circuit.
 Argued Dec. 4, 1984.
Decided April 4, 1985.
 
 David G. Gray, Asheville, N.C. (Gray, Kimel & Connolly, P.A., Asheville, N.C., on brief), for appellant.
 E. Glenn Kelly, Asheville, N.C. (Bennett, Kelly & Cagle, P.A., Asheville, N.C., on brief), for appellee.
 Before RUSSELL, WIDENER and SNEEDEN, Circuit Judges.
 DONALD RUSSELL, Circuit Judge:
 
 
 1
 This is a case brought by David G. Gray, trustee in bankruptcy for the estate of William Jerry Page d/b/a Hendersonville Food Center, against Giant Wholesale Corp., a Tennessee corporation, to recover for allegedly ineffective, voidable and preferential transfers made to Giant before Page filed his voluntary Chapter 7 bankruptcy petition.[1] The district court held, as a matter of law, that Giant was a secured creditor, thereby defeating Gray's attempt to subordinate Giant's security interest under N.C.Gen.Stat. Sec. 25-9-301(1)(b) (Supp.1983); that Giant was not an "insider" and did not receive any voidable preferential transfers; and that Giant had not received an unlawful bulk transfer.[2] The district court submitted to the jury the question whether Giant's sale of Page's repossessed inventory and equipment was commercially reasonable,[3] and the jury found the sale to have been commercially reasonable. We affirm.
 
 
 2
 * Page began working in Wayne Ingle's Stoney Knob Superette (a grocery store) in 1979. Shortly thereafter, Ingle apparently made Page a part-owner of the store. Ingle and Page then contemplated opening a new store, the Hendersonville Food Center (Food Center), and they contacted Giant, the primary inventory supplier of the Stoney Knob store. Giant agreed to supply groceries to Food Center, provided Ingle and Page agreed to guarantee all indebtedness incurred by Food Center. Subsequently, on April 23, 1980, Ingle and Page, purportedly representing Ingle-Page Enterprises, Inc.,[4] signed promissory notes, a security agreement, and a guaranty agreement. The security agreement provided that Giant was to retain a security interest in Food Center's then owned or thereafter acquired inventory, including its groceries, floats, shelves, refrigeration equipment, cash registers, and heating and air-conditioning equipment. Although Giant filed a financing statement on April 23, 1980, it concedes that it did not perfect its security interest in Food Center's inventory by notice filing.
 
 
 3
 Shortly after Giant agreed to supply Food Center, Ingle and Page had a "falling out." Ingle agreed to retain ownership of the Stoney Knob store, and Page succeeded to sole ownership of Food Center. Page, however, was unable to revive the solvency of Food Center. On October 17, 1980, Page agreed to relinquish control of Food Center's checking account to Giant. Giant controlled the dispensation of all checks, but Page determined the amount of money to be placed into the checking account and Page continued to manage Food Center. Between October 17, 1980, and February 12, 1981, Giant issued over 300 checks from Food Center's account; only 23 checks were issued to Giant and the amount of Food Center's indebtedness to Giant increased while Giant controlled its checking account.
 
 
 4
 On February 12, 1981, Giant notified Page that it intended to repossess all of Food Center's inventory because of the mounting indebtedness and Page's default under the security agreement. In fact, Giant repossessed Food Center's inventory and equipment on the evening of February 12, transported it to Tennessee, returned the non-perishable inventory to its stock, and sold the equipment and perishable inventory at private sales. Giant informed Page of the manner of disposition. One day after repossessing the inventory, Giant induced Page to sign a security agreement and a financing statement covering the inventory and equipment that Giant had already repossessed. Giant filed such financing statement. Thereafter, on September 30, 1981, over seven months after the inventory was repossessed, Page filed a voluntary Chapter 7 bankruptcy petition. Gray was appointed as trustee, and he brought this action against Giant.
 
 II.
 
 5
 Initially, Gray contends that Giant failed to perfect its security agreement in Food Center's inventory by notice filing, therefore, Gray contends that Giant's interest in the inventory is subordinate to the rights of the trustee as a hypothetical lien creditor pursuant to Bankruptcy Reform Act Sec. 544(a)(1)[5] and the North Carolina Uniform Commercial Code Sec. 9-301(1)(b).[6] Gray, however, overlooks the fact that a financing statement need not be filed to perfect a security interest in collateral which is in the possession of the secured party.[7] Giant, due to the default of Page under the security agreement signed by Page on April 23, 1980, lawfully repossessed the inventory on February 12, 1981 without breaching the peace.[8] Giant thereby perfected its security interest by possessing the inventory, pursuant to N.C.Gen.Stat. Sec. 25-9-305. See Raleigh Indus. of America v. Tassone, 74 Cal.App.3d 692, 141 Cal.Rptr. 641 (1977); Rosner v. Plaza Hotel Assoc., Inc., 146 N.J.Super. 447, 370 A.2d 41 (1977). Consequently, Giant had a perfected security interest in Food Center's inventory that was not subordinated to the Sec. 544(a)(1) strong-arm powers of the trustee.
 
 
 6
 Gray next argues that Giant, by dispensing itself checks from Food Center's account and by repossessing the inventory, received voidable preferential transfers.[9] Gray, recognizing that the alleged preferential transfers took place more than ninety days yet less than a year before Page filed his bankruptcy petition, contends that Giant was an "insider" who knew that Food Center was insolvent. Giant, however, was not an insider or a person in control[10] of Food Center merely because Giant controlled the dispensation of its checks. In re Schick Oil & Gas, Inc., 35 B.R. 282, 285 (Bankr.W.D.Okla.1983). Instead, Page had sole control over Food Center because Page controlled the amount of money that was placed into the account and Page managed every aspect of the store, including setting the store's hours, setting employee wages, making hiring and firing decisions, determining what advertising was necessary, and determining what goods were to be purchased. Because Giant was not an insider of Food Center, the transfers it received more than ninety days before the bankruptcy petition was filed are not avoidable as preferential.
 
 
 7
 Gray further contends that Giant, by repossessing all of Food Center's inventory, received an ineffective bulk transfer pursuant to N.C.Gen.Stat. Sec. 25-6-104. Gray, however, overlooks a recognized exception to the bulk transfer provisions for transfers "in settlement or realization of a lien or other security interest." N.C.Gen.Stat. Sec. 25-6-103(3). Since Giant, as a secured creditor repossessing its collateral, was merely enforcing its security interest, it is excepted from the bulk transfer provisions.
 
 
 8
 Lastly, Gray contends that the district court improperly instructed the jury concerning the commercial reasonableness[11] of the private sales of Food Center's inventory and equipment. Gray, however, never objected to the commercial reasonableness instructions given the jury and, therefore, cannot assign such instructions as error, pursuant to Fed.R.Civ.P. 51. Nor were the instructions given erroneous. The district court properly instructed[12] the jury that Giant had the burden of establishing the commercial reasonableness of the sales, and the jury found that Giant had met that burden.
 
 
 9
 Accordingly, the judgment of the district court is
 
 
 10
 AFFIRMED.
 
 
 
 [1]
 Jurisdiction was based upon 28 U.S.C. Sec. 1471(b) (1983)
 
 
 [2]
 See N.C.Gen.Stat. Sec. 25-6-101 et seq
 
 
 [3]
 Pursuant to N.C.Gen.Stat. Sec. 25-9-504(3)
 
 
 [4]
 Ingle and Page represented in the promissory notes, the security agreement, and the guaranty agreement that Ingle-Page Enterprises, Inc. was the debtor, but no such corporation ever legally existed. Since both Ingle and Page signed such documents, they are bound by them
 
 
 [5]
 11 U.S.C. Sec. 544(a)(1) (1983)
 
 
 [6]
 N.C.Gen.Stat. Sec. 25-9-301(1)(b)
 
 
 [7]
 See N.C.Gen.Stat. Sec. 25-9-302(1)(a)
 
 
 [8]
 Pursuant to N.C.Gen.Stat. Sec. 25-9-503
 
 
 [9]
 Pursuant to 11 U.S.C. Sec. 547(b)
 
 
 [10]
 See 11 U.S.C. Sec. 101(25)(B)(iii)
 
 
 [11]
 Every aspect of the disposition of repossessed collateral must be commercially reasonable, pursuant to N.C.Gen.Stat. Sec. 25-9-504(3)
 
 
 [12]
 As required by North Carolina law. See Wachovia Bank & Trust Co. v. Murphy, 36 N.C.App. 760, 245 S.E.2d 101, appeal denied, 295 N.C. 557, 248 S.E.2d 734 (1978); ITT--Industrial Credit Co. v. Milo Concrete Co., 31 N.C.App. 450, 229 S.E.2d 814 (1976)